*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JORDAN ROBERT STEFANSKI,

Defendant-Appellant.

UNPUBLISHED
July 14, 2022

No. 357102
Berrien Circuit Court
LC No. 2020-002238-FC

Before: SAWYER, P.J., and LETICA and PATEL, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] his sentence for his conviction of armed robbery, MCL 750.529. The trial court sentenced defendant, as a second-offense habitual offender, MCL 769.10, to 240 to 720 months' imprisonment. We affirm in part, reverse in part, and remand for resentencing.

This case arises out of defendant's armed robbery of a home, along with four codefendants. At the time of the robbery, two adults and two children were in the home. The adult male victim reported that he and the adult female victim were asleep when defendants kicked in the back door, and two of them entered the bedroom, including defendant, who was wearing a ski mask and holding a shotgun. Defendants demanded marijuana and access to the victims' safe. During the course of the robbery, the male victim was hit in the shoulder and the cheek. When defendants left with marijuana and money, the male victim got into his car and tried to catch up with them. He eventually crashed into the back of their vehicle, but defendants got away and were later arrested. The female victim reported that she told one of the codefendants the combination to the safe, but then had to go to the basement to open it. The female victim asked defendants not to hurt the children. One defendant put a gun to the female victim's head in front of her child and hit the child in the back with the gun in order to guide her and the child back upstairs.

---

[1] *People v Stefanski*, unpublished order of the Court of Appeals, entered July 13, 2021 (Docket No. 357102).

Defendant pleaded guilty to armed robbery, with one supplemental felony conviction. Defendant testified at the plea hearing that he went to a home in Berrien County with the codefendants. Defendant had a shotgun, which he aimed at the owner of the home. Further, he and the codefendants took money and cannabis-related items from the home. Defendant additionally admitted that he had been previously convicted in Indiana of resisting and obstructing.

At defendant's first sentencing hearing, the trial court asked why it had accepted defendant's plea as second-offense habitual offender if defendant did not have a previous felony conviction. The prosecution and defense counsel thought that defendant had run from the police, and the prosecution explained that resisting and obstructing was not a felony in Indiana, but a felony or an attempt to commit a felony could be used as a supplement in Michigan if it would have been a felony in Michigan, pursuant to MCL 769.10. The trial court explained that it would adjourn the hearing in order for the parties to obtain the police report and determine what happened before the trial court decided the supplement issue.

Defendant participated in the second sentencing hearing remotely from jail, although defense counsel was present in the courtroom. The trial court stated that the police report showed that defendant ran from the police, which would constitute the two-year felony of resisting and obstructing in Michigan. The trial court explained that under the caselaw, it did not have any choice but to find that defendant's conduct in Indiana constituted a felony had he committed it in Michigan. Therefore, the trial court determined that it would sentence defendant as a second-offense habitual offender.

Next, defense counsel objected to the assessment of points for offense variable (OV) 7. Following arguments by the prosecution and defense counsel, the trial court assessed 50 points for OV 7.

The victims did not speak at the sentencing hearing. The prosecution stated that one of the codefendants, Cameron Lampkins, was eight years older than defendant, "had a significantly worse criminal history," and "was the most culpable of all of the offenders." Another judge had sentenced Lampkins to 25 to 60 years' imprisonment. The prosecution explained next that the judge who had sentenced Lampkins had also sentenced another codefendant, Donald Kissinger, to 20 to 60 years' imprisonment. Kissinger was the half-brother of Lampkins. The prosecution argued that Kissinger's sentencing guidelines were the same as defendant's, and although defendant was younger than Kissinger, defendant's "role in the offense could be said to have been more egregious." The prosecution explained that defendant wore a ski mask and carried a shotgun into the home in order to compel money from the victims, and defendant had reported that "he was the muscle." The prosecution did not, however, think that defendant deserved greater punishment than Kissinger, and the prosecution recommended that the trial court sentence defendant to 240 months to 60 years' imprisonment.

Defense counsel argued that although defendant was being supplemented as a second-offense habitual offender, the offense was his first felony, and the gun was not his gun. Defense counsel further argued that defendant was "legitimately sorry" and regretful. Defense counsel stated that he wished that defendant was in the courtroom so that he could express this to the trial court and so that the trial court could see that defendant was "looking forward to his opportunities of rehabilitation in prison." Defense counsel asserted that it was difficult to see defendant on the

camera. Defense counsel requested that the trial court consider a shorter sentence for defendant and not "lump" defendant in with Kissinger and Lampkins.

The trial court sentenced defendant to 240 to 720 months' imprisonment. This appeal followed.

Defendant argues first that he is entitled to resentencing on the basis of his remote participation in his sentencing hearing. We agree.

This Court reviews "de novo questions of constitutional law and issues of statutory interpretation." *People v Buie*, 491 Mich 294, 304; 817 NW2d 33 (2012). This Court also reviews de novo as a question of law the proper interpretation and application of a court rule. *People v Cole*, 491 Mich 325, 330; 817 NW2d 497 (2012). Further, this Court reviews for plain error an unpreserved sentencing error. *People v McLaughlin*, 258 Mich App 635, 670; 672 NW2d 860 (2003). Under the plain-error rule, a defendant must show that an error occurred, the error was clear or obvious, and the error affected the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Prejudice means that "the error affected the outcome of the lower court proceedings." *Id*. Even when a defendant shows that a plain error has affected his or her substantial rights, this Court retains discretion when deciding whether to reverse, and will only grant reversal when the plain error resulted in the conviction of an actually innocent defendant or the error significantly affected the "fairness, integrity, or public reputation of judicial proceedings." *Id*. at 763-764 (quotation marks and citation omitted).

"A defendant's right to allocute before sentence is passed—to look a judge in the eye in a public courtroom while making his or her plea—stems from our legal tradition's centuries-old recognition of a defendant's personhood, even at the moment he or she is condemned to prison." *People v Heller*, 316 Mich App 314, 318; 891 NW2d 541 (2016). At the time of defendant's sentencing hearing, MCR 6.006 provided, in relevant part:[2]

> (A) Defendant in the Courtroom or at a Separate Location. District and circuit courts may use two-way interactive video technology to conduct the following proceedings between a courtroom and a prison, jail, or other location: initial arraignments on the warrant or complaint, probable cause conferences, arraignments on the information, pretrial conferences, pleas, sentencings for misdemeanor offenses, show cause hearings, waivers and adjournments of extradition, referrals for forensic determination of competency, waivers adjournments [sic] of preliminary examinations, and hearings on postjudgment motions to amend restitution.

---

[2] Effective July 26, 2021, the Legislature added:

> (E) Notwithstanding any other provision in this rule, until further order of the Court, AO No. 2012-7 is suspended and trial courts are required to use remote participation technology (videoconferencing under MCR 2.407 or telephone conferencing under MCR 2.406) to the greatest extent possible. Any such proceedings shall comply with the requirements set forth in MCR 2.407(G).

* * *

(C) Defendant in the Courtroom—Other Proceedings. As long as the defendant is either present in the courtroom or has waived the right to be present, upon a showing of good cause, district and circuit courts may use videoconferencing technology to take testimony from a person at another location in the following proceedings:

(1) evidentiary hearings, competency hearings, sentencings, probation revocation proceedings, and proceedings to revoke a sentence that does not entail an adjudication of guilt, such as youthful trainee status[.]

"By carefully delineating the proceedings amenable to the employment of two-way interactive video technology, the Supreme Court has telegraphed that this means of communication may not be used elsewhere." *Heller*, 316 Mich App at 318.

Also in effect at the time of defendant's sentencing hearings were a number of Michigan Supreme Court Administrative Orders, including Administrative Order 2020-6 (April 7, 2020), which provided:

On order of the Court, pursuant to 1963 Const, Art VI, Sec 4, which provides for the Supreme Court's general superintending control over all state courts, the Court authorizes judicial officers to conduct proceedings remotely (whether physically present in the courtroom or elsewhere) using two-way interactive videoconferencing technology or other remote participation tools under the following conditions:

• any such procedures must be consistent with a party's Constitutional rights;

• the procedure must enable confidential communication between a party and the party's counsel;

• access to the proceeding must be provided to the public either during the proceeding or immediately after via access to a video recording of the proceeding, unless the proceeding is closed or access would otherwise be limited by statute or rule;

• the procedure must enable the person conducting or administering the procedure to create a recording sufficient to enable a transcript to be produced subsequent to the activity.

Administrative Order 2020-6 further provided that "all judges in Michigan [were] required to make a good faith effort to conduct proceedings remotely whenever possible." Administrative Order 2020-19 additionally provided that courts were to "continue to expand the use of remote participation technology (video or telephone) as much as possible."

As defendant argues, there is no indication in the lower court record that defendant waived his right to be present at the hearing. Instead, defense counsel specifically noted that he wished that defendant was in the courtroom because it was "really hard to see [defendant] on the camera"

-4-

and because defense counsel thought that the trial court would be better able to see defendant's remorse in person. Moreover, despite the administrative orders intended to protect participants during the pandemic, defense counsel, the prosecution, and the trial court were present in the courtroom. Therefore, it is unclear that defendant's absence from the proceedings was due to safety measures.

In *Heller*, 316 Mich App at 315, the defendant remotely participated from the county jail, while defense counsel was in the courtroom and did not object to defendant's absence. This Court explained that defendant's "absence from the sentencing nullified the dignity of the proceeding and its participants, rendering it fundamentally unfair." *Id*. *Heller* occurred before the pandemic, so there were no COVID-19 related administrative orders recommending an increase in remote participation or affecting the judicial proceedings, and the analysis will not be identical with that in *Heller* or other prepandemic caselaw. See, e.g., *People v Phaneuf*, 478 Mich 862; 731 NW2d 405 (2007). However, nothing in these administrative orders seems to expressly permit remote participation without consent in a felony sentencing hearing, particularly when the trial court did not indicate that defendant's absence was a result of the safety measures, and the other participants were in the courtroom.

More recently, in *People v Anderson*, ___ Mich App ___ , ___; ___ NW2d ___ (2022) (Docket No. 354860, issued 3/31/2022); slip op at 6, this Court explained that the "defendant appeared remotely for his sentencing hearing because the trial court conducted the proceeding pursuant to AO 2020-6 during the COVID-19 pandemic." This Court explained that

> [i]n-person, face-to-face hearings can be critical to sentencing decisions. Not only do in-person proceedings allow the court to gauge the veracity of a defendant during the hearing (including, perhaps most importantly, while listening to and watching defendant's allocution), but the formality of the courtroom, the presence of the attorneys, judge and staff, provide a solemn stage for such important decisions. Remote proceedings, despite the greatly improved and available technologies, simply do not compare to face-to-face interaction. [*Id*. at 7.]

This Court held that there was "no evidence, inference, nor indication that defendant's treatment likely would have been different had he been face-to-face with the sentencing judge" and, therefore, affirmed the defendant's sentence. *Id*. at 8.

Unlike in *Anderson*, there was no explanation in this case for why defendant was not present when defense counsel, the trial court, and the prosecution were present. Specifically, the trial court did not explain that defendant's remote participation was a result of the administrative orders and pandemic measures. Although the trial court may have found good cause to have defendant remotely participate while other parties were present, the trial court did not state those findings on the record, nor was there any indication that defendant waived his right to be present. See MCR 6.006(C). Further, the defendant in *Anderson* did not assert that the plain error affected the outcome, while in this case, defense counsel argued *at sentencing* that defendant's physical absence would impact the trial court's ability to see defendant's remorse and even that it was difficult to see defendant on the camera because he appeared to be "very tiny." Additionally, although defendant does not specifically argue on appeal that the plain error affected the outcome, defendant argues that he was not able to properly consult with defense counsel during the hearing. At one point during the sentencing hearing, for example, defendant attempted to speak, and the

recorder stated that defendant was on mute, so he had to repeat himself. The transcript alone cannot show that defendant was otherwise able to communicate with the trial court and defense counsel as needed.

Crucially, this Court also noted in *Anderson*, ___ Mich App at ___; slip op at 8 n 4, that the prosecution had "articulat[ed] the multiple aspects in which the trial court conducted the sentencing proceedings that establish[ed] the overall fairness and integrity of the proceedings and demonstrate[d] that, despite defendant's physical absence from the courtroom, the overall propriety of the proceedings and the trial court's reputation were preserved." Further, the prosecution had argued "that the trial court ensured the fairness and integrity of defendant's sentencing proceeding particularly in light of the circumstances of the global pandemic." *Id.* In this case, the prosecution has not filed a brief on appeal, so there is no further explanation regarding the proceedings or the efforts to maintain fairness and integrity, nor even an argument that defendant's participation was remote because of the pandemic. Additionally, although this Court noted that *Heller* was not controlling because it did not involve the plain-error standard, *Anderson*, ___ Mich App at ___; slip op at 7, the defendant in *Heller*, 316 Mich App at 315, did not object to his remote participation in the sentencing hearing, as defendant in the present case did not object on the record, and this Court ordered that if the defendant in *Heller* chose to be resentenced on the basis of a separate issue with his sentencing,[3] the resentencing was to occur in person.

Accordingly, defendant is entitled to be resentenced. At resentencing, the trial court should either determine that there is a basis to hold the hearing remotely pursuant to the administrative orders, or defendant should participate in person.

Defendant argues next that the trial court erred by assessing 50 points for OV 7. Although we do not necessarily agree that OV 7 was properly scored, in light of the fact that we are remanding the matter for resentencing, we decline to address the scoring issue at this time. Rather, on remand, the trial court shall reconsider its scoring of OV 7 and shall do so in light of this Court's opinion in *People v Hunt*, 290 Mich App 317; 810 NW2d 588 (2010). We note in particular this Court's directive that "only the defendant's actual participation should be scored," rather than the actions of other defendants. *Id.* at 326.

Finally, defendant argues that the trial court erred by sentencing him as a second-felony offender when there was no record evidence that his out-of-state offense could have constituted a felony Michigan. We disagree.

MCL 769.10(1) provides for increased sentences on the basis of previous convictions in some cases, including when

> a person has been convicted of a felony or an attempt to commit a felony, whether
> the conviction occurred in this state or would have been for a felony or attempt to

---

[3] The trial court in *Heller*, 316 Mich App at 317, sentenced the defendant before the Supreme Court decided *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), so this Court determined that the defendant was permitted to a reconsideration of his sentence if he so chose.

-6-

commit a felony in this state if obtained in this state, and that person commits a subsequent felony within this state . . . .

"The act requires that the offense be a felony in Michigan under Michigan law, irrespective of whether the offense was or was not a felony in the state or country where originally perpetrated." *People v Quintanilla*, 225 Mich App 477, 479; 571 NW2d 228 (1997). Therefore, "the facts of the out-of-state crime, rather than the words or title of the out-of-state statute under which the conviction arose, are determinative." *Id*.

Defendant did not testify regarding the facts of his Indiana previous case or that it would have constituted a felony in Michigan, although he pleaded guilty to being a habitual offender. However, the trial court adjourned the first sentencing hearing in order to obtain the Indiana police report.[4] See *Quintanilla*, 225 Mich App at 479 n 3. At the second hearing, the trial court explained that the police report showed that defendant ran from the police, which would constitute the two-year felony of resisting and obstructing in Michigan, although it was only a misdemeanor in Indiana. As a result, the trial court properly considered the facts of the previous offense and found that the Indiana offense constituted a felony in Michigan. In defendant's Indiana offense, officers were responding to a report of a burglary. Officers found defendant walking away from the scene, and, therefore, had reason to stop him. See *People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005). However, defendant ran from one officer who had stated that he was with the police and told defendant to stop. Defendant then ran from another officer. See MCL 750.81d. Although defendant may have pleaded to the Indiana offense as a misdemeanor, MCL 769.10 expressly provides that an out-of-state conviction constitutes a supplemental offense if it would have constituted a felony in Michigan. See *Quintanilla*, 225 Mich App at 479. Therefore, the trial court did not err by finding that defendant's Indiana offense would have constituted a felony and sentencing defendant as a second-offense habitual offender. See MCL 769.10. But see *Quintanilla*, 225 Mich App at 479.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Anica Letica
/s/ Sima G. Patel

---

[4] Defendant argues that there was no information in the record regarding the Indiana conviction. Although the Indiana police report was not introduced as an exhibit, the trial court adjourned the first sentencing hearing in order to obtain it, the parties discussed the report during the second sentencing hearing, and the trial court expressly considered it when determining whether to sentence defendant as a second-offense habitual offender.