*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

EDWARD LAWRENCE TALLMAN III,

        Defendant-Appellant.

UNPUBLISHED
February 16, 2023

No. 357625
Mackinac Circuit Court
LC No. 2018-003983-FC

Before: SHAPIRO, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

Defendant appeals as on leave granted[1] from the trial court's denial of his motion to withdraw his plea of guilty but mentally ill, MCL 768.36, to second-degree murder, MCL 750.317.

There is no dispute that defendant shot his neighbor to death. Defendant's theory of the case was that he was not guilty by reason of insanity. Defendant underwent two evaluations regarding criminal responsibility; the Center for Forensic Psychiatry opined that defendant was not mentally ill at the time of the shooting and was probably "malingering"; an independent examination opined that defendant was mentally ill at the time of the shooting but not legally insane. Defendant was bound over on multiple charges, including first-degree murder, MCL 750.316, but ultimately accepted the plea of guilty but mentally ill to second-degree murder. At sentencing, he asked to withdraw his plea, claiming he had been coerced by his trial counsel into accepting the plea and that he wanted to take the matter to trial. The trial court refused to permit defendant to withdraw his plea, and it imposed a sentence of 43 to 80 years' imprisonment, with credit for 99 days. Defendant, through newly assigned counsel, later moved to withdraw his plea. When the original trial judge retired, the matter was reassigned to a successor judge. The trial

---

[1] This Court initially denied leave to appeal by order dated September 1, 2021. Defendant thereafter filed an application for leave to appeal with the Supreme Court. In lieu of granting leave, the Supreme Court remanded the matter to this Court for consideration as on leave granted. *People v Tallman*, 509 Mich 870; 970 NW2d 661 (2022).

court denied defendant's motion to withdraw his plea, and defendant pursued this appeal. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Police officers responded to a 911 call on April 27, 2018, and found defendant standing in a yard, covered in blood of unclear origin. Defendant was arrested and explained to officers that he had killed someone, although he gave conflicting statements about who he had killed. The police discovered the victim in a neighboring house clearly deceased from multiple gunshot wounds. Defendant was treated for minor injuries at a hospital and taken to jail, where he initially gave an interview and denied involvement in the crime. Defendant then requested a second interview, where he claimed he went to the victim's house to confront the victim about being a methamphetamine manufacturer. According to defendant and surveillance video footage, defendant was armed only with a crucifix. The confrontation went poorly and defendant shot the victim multiple times with the victim's gun, including at least once after the victim was clearly no longer a threat and once in the groin. The interviewing officer regarded defendant as "very calculated in his responses" during that interview and opined that defendant "seemed to think them through before he responded."

Defendant's trial counsel, George Tschirhart, moved for defendant to receive a forensic examination into his competency to stand trial and his criminal responsibility. Margo Gilbert, Ph.D., of the Department of Health and Human Services Center for Forensic Psychiatry[2] (CFP), first completed a determination of defendant's competency to stand trial. She determined that defendant was competent to stand trial, and she opined that defendant was neither insane nor mentally ill, but rather disingenuously attempting to give the impression that he was suffering from mental illness. As part of her evaluation into defendant's criminal responsibility, Dr. Gilbert explained that she interviewed defendant for three hours, reviewed defendant's records from the Department of Corrections and his prior CFP referrals, reviewed information provided by law enforcement, reviewed defendant's prior criminal history, and reviewed some recent medical records from various sources. Dr. Gilbert expressed the opinion that defendant did not have any intellectual disability at the time of the alleged offenses, and defendant "was not mentally ill as defined by statute at the time of the alleged offense." She noted that although defendant had some psychiatric hospitalizations "many years ago" possibly as a result of drug abuse, and he had recent medical health concerns, there was no evidence that he had any current psychiatric problems. Rather, Dr. Gilbert noted that defendant had "a longstanding and well-documented history of violence" and "a history of being disingenuous with law enforcement when arrested." She believed defendant was making a deliberate effort to give a false impression that he was suffering from mental health problems. She concluded that defendant "was not mentally ill at the time of

---

[2] "[T]he Center of [*sic*] Forensic Psychiatry is an independent branch of the state government." *People v Hayes*, 421 Mich 271, 288; 364 NW2d 635 (1984). A defendant seeking to assert an insanity defense must be examined by qualified CFP personnel, MCL 768.20a(2), and failure to comply fully with the examination may result in the defendant being precluded from availing themself of the defense, MCL 768.20a(4).

the alleged offense" and "the aggregate of information does not support a defense of legal insanity." Defense counsel then requested an independent evaluation.

Meanwhile, defendant interrupted his preliminary examination multiple times, proclaiming that he had killed the victim because defendant had a mental illness; the trial court and counsel both made valiant efforts to persuade defendant that it was not in his best interests to continue doing so. The district court bound defendant over on the charges. The district court also considered what it presumed to be a claim of ineffective assistance of counsel and opined that "Mr. Tschirhart did a more than adequate job, a good job at trying to find the holes in the case that he could find."

Defendant also handwrote two letters to the trial court complaining about defense counsel. Defendant first complained that counsel had not informed him about the date of his preliminary examination, refused to seek an independent examination, and swore at his mother on the phone. Defendant then further complained that he did not agree to the evaluator his trial counsel requested to perform the independent evaluation. In both letters, defendant asked to be appointed new counsel. The trial court seemingly responded to neither letter.

Dorothy S. Kahler, Psy.D. completed the independent evaluation. Dr. Kahler interviewed defendant's mother, defendant's parole officer, and two people who had seen defendant shortly before the shooting, in addition to interviewing defendant. Dr. Kahler also reviewed defendant's police records and medical records, including Dr. Gilbert's evaluation, and she administered a MMPI-2 personality test. Dr. Kahler opined that defendant was a person who suffered from anger, believed he was being persecuted, probably had little empathy and poor impulse control, and had "a limited tolerance for frustration." "Anger appears to be a prominent feature of his personality, along with poor tolerance for frustration and a tendency to project blame for his circumstances onto others," and although he might have some "persecutory beliefs which may be delusional in their intensity . . . he did not disclose any fixed or organized delusional beliefs." Dr. Kahler opined that defendant "was mentally ill at the time of the alleged offense, but that his condition did **not** meet statutory criteria for legal insanity" (emphasis in original). She nevertheless believed defendant's "mental illness, in the context of significant personality factors outlined above, had a substantial effect on his behavior."

Despite the unfavorable result of the independent evaluation, defendant's trial counsel continued doggedly pursuing an insanity defense. He filed a notice of intent stating that he also intended to call Dr. Gilbert, Dr. Kahler, and a number of other witnesses, including defendant's mother, the person who called 911 and in whose yard defendant was found by police, and one of the other individuals who Dr. Kahler had interviewed. At two brief hearings, the attorneys represented that they were still trying to resolve the matter, but they nevertheless asked the trial court to schedule a trial. After one of those hearings, defendant wrote another letter to the trial court, again asking for a new attorney, complaining that defense counsel had not given defendant adequate explanations of what was going on, and expressing the belief that defense counsel did not have defendant's best interests at heart. Defense counsel filed a trial brief stating that he expected the jury to find defendant not guilty by reason of insanity as to all charges.

At a pretrial hearing, the prosecution placed on the record its offer for defendant to plead guilty but mentally ill to second-degree murder with no habitual offender enhancement and

sentencing at the discretion of the trial court.  The prosecutor expressed the belief that defendant had rejected that offer.  The trial court then urged defendant to think seriously about his options.  The trial court also demonstrated awareness of defendant's dissatisfaction with defense counsel, stating,

> I have all the faith in Mr. Tschirhart.  He's been doing this a long time.  I'm not in the position to remove him, given where we're at and the amount of time that he's spent and the Court's understanding of the circumstances.

At defense counsel's request, the court went off the record for 24 minutes, and when court resumed, defendant entered his plea of guilty but mentally ill.  In salient part, defendant agreed that he killed the victim while suffering from a mental illness and as a result of that mental illness.  The attorneys agreed to base defendant's diagnosis on Dr. Kahler's report.   The following exchange occurred:

> *The Court*.  Mr. Tallman, you understand by pleading guilty here today to the charge that's been read that there will not be a trial, and all those rights that you have at trial you would be waiving or giving up?
>
> Do you understand that?
>
> *Defendant*.  Yes.
>
> *The Court*.  This is the form that explains those rights that you're waiving.  You need to look it over, sign it, and date it.  You don't need to put your address on it.
>
> You're waiving your right to a trial, your right to be presumed innocent by entering a plea of not—or a plea of guilty but mentally ill.
>
> * * *
>
> *The Court*.  Any questions of the Court, Mr. Tallman?
>
> *Defendant*.  No, sir.
>
> *The Court*.  Other than what's been stated on the record, do you understand there are no other promises or inducements to get you to plead guilty here today?
>
> *Defendant*.  Yes.
>
> *The Court*.  Okay.  All right.
>
> Anything further, Mr. Spencer? [the prosecutor]
>
> *Mr. Spencer*.  No, your Honor.  Thank you.

*The Court*. Are the parties satisfied with the testimony such that the Court can accept the plea?

*Mr. Spencer*. So satisfied, your Honor.

*Mr. Tschirhart*. I am, you Honor.

*The Court*. Very well. The Court is also satisfied with the testimony and the record before the Court with the submission of the report that the Court can accept the plea, and the same will be made a part of the record.

The trial court then proceeded to schedule sentencing.

However, shortly after the plea, defendant handwrote another letter to the trial court, asserting that he wanted to withdraw his plea and go to trial, reiterating his belief that defense counsel did not have his best interests at heart and contending that he had been "pressured (bullied)" into accepting the plea agreement. Defendant stated, "I want and need a court appointed attorney who wants what I want. Not fight against me the whole way like Mr. Tschirhart has." Defendant asked the trial court to appoint him a new attorney, allow him to withdraw his plea, and allow him to go to trial. At the sentencing hearing, the trial court asked defendant what defendant wished to say, and the following exchange occurred:

*Defendant*. Sir, the last time we had—we were here, we went in the back room after court was adjourned, and all Mr. Tschirhart did was, was say, "You need to take this plea. You need to take this plea. You need to take this plea."

And I—I didn't want to take this plea, as you know, and I finally—I gave in to him. Why, I don't know. But I want to take this to trial. And I want a different attorney, one that I can trust, and one that I (inaudible) to bat for me.

*The Court*. Do you want to respond at all to the allegations here, Mr. Tschirhart?

*Mr. Tschirhart*. Only, your Honor, that I guess I disagree. I didn't—I don't feel that I pressured the Defendant. I spoke to him in the jury room, there was law enforcement outside the door. I didn't draw to his attention such that I was yelling at him or using obscenities or gestures or charts or graphs or anything else.

We just talked about, you know, what he may want to do, and I didn't think I was pressuring him. I was just literally talking in the English language, like I do with every other client, and he elected to take the plea so we set it up and did it.

I didn't try to impose my will or, as I say, use any threats or promises or anything along those lines. I just discussed his options and thought it would be in his interest. We talked about it, and he elected to do it.

And that was my recollection what we did. We simply had, you know, a conversation, but it wasn't anything animated or I don't think overly forceful or anything like that. I was talking to him in a tone just like I'm talking to you right now.

As I say, I didn't—I think—I think law enforcement would have jumped in if we were—if I was getting a little overly aggressive or if maybe we were being too loud or anything like that. But it wasn't. I didn't recall it was that kind of an exchange.

*The Court.* Very well.

\* \* \*

Anything else, Mr. Tallman?

*Defendant.* I don't want to take this plea. You know, I don't want to take this plea, your Honor. I want to take this to trial.

Mr. Tschirhart did—I'm not making this up, sir. He did pressure me into taking this plea. That's all he said over and over, "You need to take this plea. You need take this plea."

I'm not making this up, sir.

*The Court.* Well, Mr. Tallman, this matter has traveled an extensive path, and Mr. Tschirhart's been your attorney pretty much from the get-go in this matter.

And it's not as if this matter was rushed by any means. A lot of deliberations went forward over time. And I wouldn't necessarily disagree with what the Prosecutor is saying in that at this point in time there's consequences, obviously. You know what those consequences are.

You came into Court. You were advised of your rights. You knew what the charges were. You knew what the penalties were. None of that was unknown to you. And under oath you voluntarily plead [*sic*] to the charge.

And given all of those facts that there was no indication at the time that you were medically impaired, at least from this record, such that this Court can find any good reason to not go forward with sentencing.

Like I said, Mr. Tschirhart's been in this process for a long time. I've not ever had an occasion to have somebody tell me that he's pressured them into a plea before. And Mr. Tschirhart and I and Mr. Spencer have been doing this for some time. I don't find that to be the character of Mr. Tschirhart now or at any time in the past.

Again, you entered a plea voluntarily after being advised of your rights, and we're prepared here now to go forward with sentencing.

So the Court's going to deny the motion to withdraw the plea and we'll proceed with sentencing.

At the conclusion of sentencing, the trial court commented that defendant's criminal record displayed the most "violent and continued immoral behavior" it had ever seen, following which it imposed sentence as described above.

Following appointment of defendant's current counsel for postjudgment proceedings, defendant, through counsel, moved to withdraw his plea; defendant argued that a breakdown in his attorney-client relationship with defense counsel had prevented him from making a knowing, intelligent, and voluntary waiver of his right to a jury trial. The trial court held a hearing on the matter, and defendant participated by video from prison. Defendant, through counsel, protested that it was unfair that defendant was visibly in some kind of cage; apparently, this was because defendant was "in a temporary segregation." The trial court pointed out that the appearance of being in shackles would matter to a jury, but its decision would not be affected. Prison officials explained that the only alternative would be to place defendant in restraints and open the door, which the trial court instructed officials to do. Defendant asked the trial court to delay the hearing until defendant could be accommodated in a more appropriate-looking room, and the trial court denied that request and promised that it would give no weight to defendant's shackles. The parties otherwise generally argued consistent with their arguments on appeal. The trial court took the matter under advisement and issued a written opinion denying defendant's motion. This appeal followed.

## II. STANDARDS OF REVIEW

"A trial court's decision on a motion to withdraw a plea is reviewed for an abuse of discretion." *People v Cole*, 491 Mich 325, 329; 817 NW2d 497 (2012). A trial court's denial of a defendant's request for substitution of appointed counsel is also reviewed for an abuse of discretion. *People v McFall*, 309 Mich App 377, 382; 873 NW2d 112 (2015). A trial court's decision regarding a defendant's physical appearance during a trial is also reviewed for an abuse of discretion. *People v Payne*, 285 Mich App 181, 186; 774 NW2d 714 (2009). An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). Questions of law are reviewed de novo, and findings of fact are reviewed for clear error. *People v Knight*, 473 Mich 324, 338; 701 NW2d 715 (2005). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002). Constitutional issues, interpretation of statutes, and interpretation and application of court rules are questions of law that are reviewed de novo. *Cole*, 491 Mich at 330. This Court reviews a trial court's compliance with the court rules governing pleas for substantial compliance rather than strict compliance. *People v Plumaj*, 284 Mich App 645, 648-652; 773 NW2d 763 (2009).

## III. COERCED PLEA

Defendant correctly observes that the decision whether to proceed to trial or plead guilty is a right held by the defendant alone, no matter how foolish a particular option might seem to be. *McCoy v Louisiana*, ___ US ___, ___; 138 S Ct 1500, 1507-1509; 200 L Ed 2d 821 (2018). "These are not strategic choices about how best to *achieve* a client's objectives; they are choices about what the client's objectives in fact *are*." *Id*. at ___; 138 S Ct at 1508 (emphases in original). The client might have their own personal or idiosyncratic reasons for preferring one objective over another, and so long as the defendant has been fully informed, the attorney must honor that objective. *Id*. at ___; 138 S Ct at 1508-1509. *McCoy* is factually distinguishable however. In that case, the defendant adamantly insisted that he had not committed the charged acts and objected to any admission of guilt. But his attorney expressly conceded to the jury during the "guilt phase" of a Louisiana trial[3] that defendant committed three murders, pursuant to a strategy of hoping for lenity during the "penalty phase." *Id*. at ___; 138 S Ct at 1505-1506. This is not a case in which defense counsel somehow entered a plea on defendant's behalf in the face of defendant's protestations.

Defendant nevertheless contends that defense counsel violated the principle of deferring to the client's ultimate objectives for two reasons: (1) he was directly coerced into accepting an unwanted plea agreement by defense counsel browbeating him until he gave in during the 24 minutes the court went off the record before defendant entered his plea; and (2) he was more indirectly but insidiously coerced into accepting an unwanted plea agreement because of the breakdown in his attorney-client relationship and the trial court's refusal to appoint new counsel. He also argues that the trial court should have granted his request to withdraw his plea because he made that request before sentencing.

Regarding defendant's argument that he was directly coerced into accepting the plea, it is critical that, before sentencing, the trial court gave defendant and defense counsel a full and fair opportunity to explain what each believed happened off the record just before defendant entered his plea. The trial court chose to believe defense counsel, apparently relying in part on its knowledge of defense counsel's character and its observations of both defendant and defense counsel during the proceedings. This Court generally defers, of necessity, to trial courts' superior ability to evaluate the credibility and demeanor of those who appear before it even when this Court's standard of review is ostensibly de novo. *Anderson v Bessemer City, NC*, 470 US 564, 574-575; 105 S Ct 1504, 1511-1512; 84 L Ed 2d 518 (1985); *In re Loyd*, 424 Mich 514, 535; 384 NW2d 9 (1986); *McGonegal v McGonegal*, 46 Mich 66, 67; 8 NW 724 (1881). The original trial judge would have been the best situated to evaluate the plausibility of defendant's claims.

Furthermore, the record shows that defendant had no issue with interrupting the proceedings to speak his mind, no matter how ill-advised doing so might have been, and at no point during his plea did defendant express any reservations whatsoever. Defendant did state at

---

[3] In Louisiana, capital cases in which the death penalty might be imposed are bifurcated into two phases, the first of which inquires into guilt and the second of which inquires into "aggravating and mitigating circumstances before sentencing." *State v Cooper*, 382 So 2d 963, 965 (La 1980).

the original motion to withdraw his plea that he did not want to take the plea, that defense counsel repeatedly said "You need to take this plea," and that he finally "gave into him" but defendant did not know why he did so. Defense counsel described his interaction with defendant as "a conversation" about defendant's options, without any threats or promises without "yelling at him or using obscenities or gestures or charts or graphs or anything else." Defense counsel repeatedly stated that he did not pressure defendant.

Defendant is correct in stating that the prosecution's case should generally be subject to meaningful adversarial testing. But if trial counsel believed that going to trial was not a realistically viable option, as defendant contends, trial counsel would have been right; furthermore, it would have been a clear violation of defense counsel's duties if defense counsel failed to advise defendant as such. That is, counsel telling defendant "You need to take this plea" was not pressure, but sound legal advice.

Given the trial court's ability to observe the demeanor of defense counsel and defendant, especially in light of the expert psychological evaluations of defendant and defendant's history of outbursts, there is no evidence suggesting that the trial court clearly erred in determining that defense counsel did not directly coerce.

Defendant's contention that he was more indirectly and insidiously coerced by being forced to accept counsel with whom his relationship had broken down is a more difficult concern. We are disturbed by the number of letters defendant wrote to the trial court seeking new counsel, most of which went ignored until just before defendant entered his plea; at that juncture the trial court refused to entertain the possibility of substitute counsel given counsel's length of service, history of plea deliberations, and absence of coercion. Had defendant raised concerns about defense counsel for the first time on the eve of trial, that might have been a reasonable response by the trial court. See *People v Strickland*, 293 Mich App 393, 399; 810 NW2d 660 (2011). But defendant first wrote to the trial court asking for new counsel almost 10 months previously, complaining, among other things, that "Mr. Tschirhart does not have my best interests at heart." Although a hearing was held on the record less than a month after that letter, defendant's request was not addressed. The trial court's failure to inquire into defendant's dissatisfaction with defense counsel was a blatant violation of its duties. *People v Ginther*, 390 Mich 436, 441-442; 212 NW2d 922 (1973).

Nevertheless, that failure does not automatically require defendant's conviction following his plea to be set aside even when defendant claims he was improperly advised or inadequately represented regarding that plea. *Ginther*, 390 Mich at 440-443. Reversal is not warranted when "the record does not show that the lawyer assigned to represent [defendant] was in fact inattentive to his responsibilities." *Id*. at 442. Furthermore, a defendant is not entitled to new counsel merely because the defendant is generally unhappy with counsel or generally lacks confidence in counsel. *Strickland*, 293 Mich App at 398. Reversal is also not warranted when a defendant cannot show how the trial court's denial of substitute counsel caused him prejudice. *People v Cumbus*, 143 Mich App 115, 121; 371 NW2d 493 (1985). Notably, defendant affirmatively denied pursuing an ineffective assistance of counsel claim in the trial court.

Defendant's first letter to the trial court expressed vague doubts about defense counsel, although defendant also complained that defense counsel failed to inform him about a court date,

used offensive language toward his mother on the phone, and turned down the trial court's initial offer of an independent examination. The trial court clearly expressed disbelief that defense counsel would engage in abusive conduct. Furthermore, defendant actually attended the preliminary examination, but apparently felt he should have received more advanced notice. Those concerns do not amount to the kind of breakdown in the attorney-client relationship that warrant replacement counsel. See *People v Meyers*, 124 Mich App 148, 165-167; 335 NW2d 189 (1983). Regarding the independent evaluation, defense counsel unambiguously turned down the trial court's offer for an IPE pending the outcome of the CFP examination. Such a decision constitutes the kind of trial strategy and professional judgment that cannot warrant substitution of counsel. See *People v Traylor*, 245 Mich App 460, 463; 628 NW2d 120 (2001). Shortly after defendant's first letter, and after the CFP evaluation, defense counsel did request an independent examination, and the trial court granted that request. Defendant then wrote another letter again seeking a new attorney, citing only that he did not agree to Dr. Kahler performing the independent examination. This decision would also fall within the range of trial strategy and professional judgment.

Defendant wrote his next letter on the day of a motion hearing where the attorneys advised the judge that the court should schedule a trial and defense counsel promising that he was "not giving up on trying to resolve it." Defendant specifically complained that he was "supposed to have court today" but defense counsel never came to see him or explain what occurred at the hearing, and he pointed out that "[t]his is not the first time this has happened." Otherwise, defendant only presented vague and unsubstantiated complaints that he did not trust defense counsel and did not believe defense counsel had defendant's best interests at heart. As with the previous two letters, the trial court should have inquired further into defendant's dissatisfaction with his appointed counsel, but there is nothing in the letter to suggest that doing so would have revealed any legitimate basis for appointing substitute counsel. Defendant made no further communications regarding dissatisfaction with defense counsel until after his plea.

Contrary to defendant's argument, filings in the trial court reflect that defense counsel nevertheless continued to pursue an insanity defense at trial on the basis of lay witnesses even after receipt of the adverse independent examination. Indeed, at the outset of the pretrial hearing, the prosecutor expressed the belief that defendant had rejected its plea offer, and all of the evidence on the record shows that defendant reconsidered only at the urging of the trial court. There is no evidence on the record that defense counsel was unprepared to take the case to trial, doomed though doing so would likely have been. In other words, the record plainly shows that there would have been no adequate cause for defendant to be appointed different counsel, and, in any event, it would have been highly improbable for defendant to have obtained a more favorable outcome by proceeding to trial. See *Cumbus*, 143 Mich App at 121. Furthermore, defendant's subjective discomfort with counsel is not grounds for appointment of a new attorney. *Traylor*, 245 Mich App at 463.

Defendant also argues that because he sought to withdraw his plea before sentencing, his request should have been granted. But defendant relies on inapposite caselaw in his argument. This Court has held that "[w]here a defendant asserts his innocence and requests to withdraw his guilty plea prior to sentencing, such a request is to be treated with great liberality and should be granted unless the request is obviously frivolous," and any doubts about "defendant's reasons for withdrawal are to be resolved in defendant's favor." *People v Lewis*, 176 Mich App 690, 693-694; 440 NW2d 12 (1989). Unlike the situation in *Lewis*, however, the trial court here entertained,

heard out, and gave due consideration to defendant's claim that his plea was coerced. Cf. *Lewis*, 176 Mich App at 692-693, 695. More importantly, also unlike the situation in *Lewis*, defendant has never proclaimed his innocence. In fact, his statements at the plea hearing were fully consistent with what he maintained from the outset: that he killed the victim as a result of his mental illness. That was, in fact, his entire defense strategy, the only potentially debatable issue being the exact nature of that mental illness. In short, defendant did not maintain his innocence, and there were no real doubts that could have been resolved in defendant's favor.

Accordingly, defendant was not entitled to the appointment of substitute counsel, and the trial court properly determined that defendant's plea was not the product of coercion.[4]

## IV. COMPLIANCE WITH PLEA COURT RULES

Pursuant to MCR 6.303, a trial court accepting a plea of guilty but mentally ill must, in relevant part, comply with the requirements of MCR 6.302. MCR 6.302 governs pleas of guilty or *nolo contendere*. *Cole*, 491 Mich at 330. Pursuant to MCR 6.302(A), the trial court must be "convinced that the plea is understanding, voluntary, and accurate." It must also place the defendant under oath and carry out the requirements of four further subrules. Defendant argues that the trial court failed to comply with two specific provisions

> (B) An Understanding Plea. Speaking directly to the defendant or defendants, the court must advise the defendant or defendants of the following and determine that each defendant understands:
>
> * * *
>
> (4) if the plea is accepted, the defendant will be giving up any claim that the plea was the result of promises or threats that were not disclosed to the court at the plea proceeding, or that it was not the defendant's own choice to enter the plea;
>
> (5) if the plea is accepted, the defendant may be giving up the right to appeal issues that would otherwise be appealable if she or he were convicted at trial. Further, any appeal from the conviction and sentence pursuant to the plea will be by application for leave to appeal and not by right[.] [MCR 6.302.]

The latter "may be satisfied by a writing on a form approved by the State Court Administrative Office," but if so, the trial court must obtain from the defendant a verbal confirmation that the defendant understood those rights. MCR 6.302(B).

---

[4] We decline defendant's invitation to remand for an evidentiary hearing as the record is sufficiently clear for us to make a determination regarding the claim of ineffective assistance of counsel. We also decline to consider defendant's argument that he was misinformed about the punishment that would result from his plea of guilty but mentally ill, because defendant provides no support for that claim. *People v Smith*, 439 Mich 954, 954; 480 NW2d 908 (1992).

Deviation from the court rules when taking a plea does not mandate setting aside the plea unless "a deviation affecting substantial rights occurred." MCR 6.610(F)(8)(b); *People v Al-Shara*, 311 Mich App 560, 567-568; 876 NW2d 826 (2015); see also MCR 1.105. An error "affected substantial rights" when it affected the outcome of the proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Under analogous federal procedures, the United States Supreme Court has explained that "affected substantial rights" means, in a plea-taking context, that "but for the error, [the defendant] would not have entered the plea." *US v Dominguez Benitez*, 542 US 74, 83; 124 S Ct 2333; 159 L Ed 2d 157 (2004). We conclude that we should engage in the same inquiry.

Defendant's argument that the trial court failed to comply with MCR 6.302(B)(4) relies on the manner in which the trial court phrased its inquiry regarding whether there had been any other promises or inducements to get him to plead guilty and on defendant's contention that, after the fact, he complained that he had been coerced. The latter contention is irrelevant to whether the trial court complied with the court rule because the trial court can only work with information known to it at the time. See *People v Burrell*, 417 Mich 439, 449; 339 NW2d 403 (1983). Regarding the former, defendant contends that the trial court imposed a conclusion on him. But as set forth above, the trial court plainly made an inquiry, and defendant agreed with that inquiry. Although the trial court erred by failing to inform defendant that he was waiving anything, as required by the court rule, the gravamen of defendant's argument is that the trial court should have probed further whether defendant had *really* not been coerced or induced. In light of defendant's response to the trial court's inquiry and the trial court's prior knowledge about defendant's propensity to assert himself, the trial court was under no obligation to do so. Simply put, defendant failed to establish that he was coerced into taking the plea; therefore, there is no reason to believe that he would have refused the plea had the trial court warned him that he was waiving the right to claim that he was coerced. The trial court therefore substantially complied with MCR 6.302(B)(4).

Defendant's argument that the trial court failed to comply with MCR 6.302(B)(5) is less clear. The trial court gave defendant an advice of rights form, which, in relevant part, stated that "[i]f your plea is accepted, any appeal from your conviction and sentence pursuant to this plea will be by application for leave to appeal and not by right." Defendant signed the advice of rights form. Defendant's letters to the trial court prove that he is literate. This is a valid manner of satisfying MCR 6.302(B)(5). See MCR 6.302(B). The trial court did fail to "obtain from the defendant orally on the record a statement that the rights were read and understood and a waiver of those rights." See *id*. Nevertheless, defendant argues that he did not "understand that he was foreclosing his right to new counsel and a trial by jury," which are not rights addressed in MCR 6.302(B)(5). In any event, the trial court did in fact tell defendant that defendant would be waiving his right to trial. A review of defendant's presentence investigation report also reveals that defendant was far from being a stranger to criminal proceedings or entering pleas to a wide variety of crimes. Although the trial court should have orally verified that defendant understood what rights he was giving up, we are not persuaded that the trial court's failure to do so affected defendant's decision to take the plea. The trial court therefore substantially complied with the requirements of both MCR 6.302(B)(4) and (5).

## V. SHACKLING DURING MOTION HEARING

Defendant finally argues that the hearing on his motion to withdraw his plea was fatally flawed, and his due-process rights were violated, because he appeared at the hearing from prison over a video connection while visibly shackled and caged. We disagree.

Criminal defendants generally have the right to appear "before the court with the appearance, dignity, and self-respect of a free and innocent man, except as the necessary safety and decorum of the court may otherwise require." *People v Shaw*, 381 Mich 467, 473; 164 NW2d 7 (1969) (quotation marks and citation omitted). The United States Supreme Court has held that the right to be free from visible shackling, absent extraordinary circumstances, applies to both guilt and penalty phases of a capital trial. *Deck v Missouri*, 544 US 622, 626-633; 125 S Ct 2007; 161 L Ed 2d 953 (2005). But as defendant concedes, the reason for that right is "that defendant's presumption of innocence would be unduly prejudiced before the jury" if he appeared in jail garb, but "[n]o such prejudicial effect could be shown" in a bench trial. *People v Daniels*, 163 Mich App 703, 710; 415 NW2d 282 (1987). In *Deck*, both phases of the trial in question involved a defendant appearing before a jury. *Deck*, 544 US at 632-633. The United States Supreme Court specially emphasized that the shackles in *Deck* had been seen by the jury. *Id*. at 634-635.

Defendant accurately observes that a defendant's appearance matters even to trial judges at sentencing. See *People v Heller*, 316 Mich App 314, 318-321; 891 NW2d 541 (2016). *Heller* addressed whether a defendant being sentenced had a right to appear in person instead of over a video connection, not whether a defendant had a right to appear free from shackling. Nevertheless, defendant urges us to reconsider the holding in *Daniels* and extend the anti-shackling protections of *Deck* to postconviction proceedings. Leaving aside whether crafting such a blanket rule would be appropriate or workable, we are not persuaded that doing so would be appropriate in this case.

Critically, defendants are expected to participate actively in sentencing where allocution is an ancient and important right. *Heller*, 316 Mich App at 318-319. This Court in *Heller* emphasized "the intensely personal nature of the process" and the fact that merely appearing by video can affect a viewer's perception of the person so appearing and alter the viewer's ability to evaluate a person's "credibility, sincerity, and emotional depth." *Id*. at 319-320. In principle, *Heller* might be extensible to other contexts where a defendant is similarly expected to participate actively and the trial judge needs to evaluate the defendant's demeanor as part of that process. At the motion hearing with the successor judge, the sole issue involved was what had happened before the predecessor judge, and the trial court's written opinion shows that the trial court properly considered only what had happened before the predecessor judge.

There is no need to extrapolate the holding in *Heller* to the hearing at issue. Under the circumstances, there is nothing to suggest that the trial court was actually or potentially swayed by defendant's appearing in shackles, and we are unable to find that defendant's due-process rights were violated.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Anica Letica
/s/ Kathleen A. Feeney