# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>DUSTIN ALAN GRIFFIN,<br><br>Appellant. | No. 85918-8-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

FELDMAN, J. — Dustin Griffin appeals from an order modifying his judgment and sentence following remand to resentence him after excising three previous convictions from his offender score pursuant to *State v. Blake.*[1]  Griffin claims he was denied his right to be present and right to counsel at the resentencing hearing and that the trial court erred in requiring him to appear while in "restraint" during the hearing and by failing to enter a new judgment and sentence.  Finding no reversible error, we affirm.

I

A jury convicted Griffin of six felony offenses, including aggravated murder in the first degree.  *State v. Griffin*, No. 54224-2-II, slip. op. at 4 (Wash. Ct. App. July 13, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2054224-2-

---

[1] 197 Wn.2d 170, 481 P.3d 521 (2021).

II%20Unpublished%20Opinion.pdf.  On appeal, Division Two of this court affirmed Griffin's convictions but remanded the matter for the trial court to correct Griffin's offender scores and resentence him because three of his prior convictions were invalidated by *Blake*. *Id*. at 15  Although the court acknowledged that the recalculations would have no impact on Griffin's sentence of life without the possibility of parole on the aggravated murder count and that reduced offender scores would not affect the standard sentencing ranges on the remaining counts, the court concluded that resentencing was nevertheless required because the trial court could impose lower sentences on any of the five concurrent counts and those sentences could become relevant if the murder conviction was overturned on collateral review.  *Id*. at 14-15

Griffin's September 2022 resentencing hearing occurred during a period of substantially modified court operations related to the public health emergency created by the COVID-19 pandemic.  Beginning in March 2020, in response to the national and state-declared state of emergency and increasingly stringent recommendations of public health officials, our Supreme Court issued a series of orders authorizing trial courts to alter regular procedures.[2]  At the time of Griffin's hearing, a fifth revised and extended order regarding court operations, issued by the Washington Supreme Court on February 19, 2021, was in effect and recognized that,

> [M]any court facilities in Washington are ill-equipped to effectively comply with social distancing and other public health requirements and therefore continued in-person court appearances jeopardize the health and safety of litigants, attorneys, judges, court staff, and

---

[2] Our Supreme Court's multiple orders can be found at
https://www.courts.wa.gov/opinions/index.cfm?fa=opinions.scorders.

members of the public. Yet, court operations are recognized as essential, and may often be conducted by alternative means, in alternative settings, and with extra measures taken for public safety[.]

*In re Statewide Response by Washington State Courts to the COVID-19 Public Health Emergency*, No. 25700-B-658, at 1-2. (Wash. Feb. 19, 2021), https://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20Orders/25 700-B-658.pdf (February 19 order).

The February 19 order acknowledged that in the preceding eleven months, Washington courts had taken important steps "to protect public health while ensuring continued access to justice" by, among other things, "holding proceedings remotely." *Id.* at 2. The order provided that in "all court operations, courts should follow the most protective public health guidance applicable in their jurisdiction, and should continue using remote proceedings for public health and safety whenever appropriate." *Id.* at 3. The order encouraged trial courts to continue to hear "in custody" criminal and juvenile matters by "means that do not require in person attendance when appropriate." *Id.* at 7. The order also directed that "[c]ourts should continue to allow telephonic or video appearances for all scheduled criminal and juvenile offender hearings whenever appropriate" and "[a]ll in-person appearances must be conducted with strict observance of social distancing and other public health measures. *Id.* at 11. And lastly, recognizing the fundamental importance of the right to counsel, the order added: "For all hearings that involve a critical stage of the proceedings, courts shall provide a means for defendants and respondents to have the opportunity for private and continual discussion with their attorney." *Id.*

Cowlitz County Superior Court likewise entered a superseding order governing court operations on August 6, 2021. *Emergency Order No. 6-A Re: Court Operations Replacing No. 5-A*.[3] That order, effective in September 2022, noted that Cowlitz County had experienced fluctuating levels of COVID positive cases and numerous deaths and recognized that the court system served a "vulnerable population" in "compact" facilities. In light of the particular risks and challenges, the order provided that, "[a]ll in custody criminal matters shall be heard virtually via the Zoom platform unless otherwise ordered by the Court." *Id.* at 3.[4]

Against this backdrop, Griffin appeared at the September 2022 resentencing hearing on remand from prison via Zoom, while the judge, defense counsel, and the prosecutor were present in the courtroom. Griffin objected to conducting the resentencing via Zoom and sought permission to attend the hearing in person, but the trial court overruled his objection and proceeded with resentencing. After considering the parties' arguments and Griffin's allocution, the court noted that Griffin's recalculated offender score for each crime still far exceeded 9, the maximum offender score according to the statutory sentencing grid, *see* RCW 9.94A.510, and that the effect of *Blake* on Griffin's offender scores was "miniscule."[5] The court imposed the same sentences on each count, at the top of the standard range, concluding that the recalculated offender scores did not impact "the gravity of this case or the length and breadth of [Griffin's] criminal past."

---

[3] See Cowlitz County Superior Court website: **Error! Hyperlink reference not valid.**https://www.cowlitzsuperiorcourt.us/all-forms/331-emergency-order-no-6-a-re-court-operations/viewdocument/331.

[4] Zoom is a cloud-based videoconferencing software platform.

[5] Griffin's reduced offender scores were between 24 and 40.

Griffin appeals.

II

A.     Right to be Present

Griffin argues he "was denied his constitutional right to be physically present at his resentencing."  We disagree.  Additionally, any error was harmless.

Critical here, Washington trial courts must comply with orders, rules, and other directives promulgated by our Supreme Court, which has the inherent authority to administer justice and ensure the safety of court personnel, litigants, and the public.  *State v. Wade*, __ Wn. App. 2d __, 534 P.3d 1221, 1230-31 (2023).  That of course includes the Supreme Court's emergency order in place when Griffin was resentenced (as recounted above).  *Id.* at 1231 ("trial court properly relied on the Supreme Court's October 2020 and June 2020 Orders . . . when it decided to allow Wade's jury to be selected over Zoom").  Even when such decisions implicate constitutional rights, as here, trial court decisions implementing COVID protocols are trial management decisions and are therefore reviewed under an abuse of discretion standard.  *State v. Ferguson*, 25 Wn. App. 2d 727, 735, 524 P.3d 1080 (2023). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.  *Id.*

The trial court did not abuse its discretion by utilizing Zoom at the resentencing hearing.  The Supreme Court's February 19 order mandated adherence to "the most protective public health guidance" and directed the use of remote proceedings for the benefit of public health and safety "whenever appropriate."  The trial court properly complied with that directive based on an

individualized consideration of Griffin's asserted rights and circumstances. As the defense acknowledged below, because Griffin's life without parole sentence was unaffected by his offender score a "full argument on re-sentencing" was not required and the "scope" of the hearing was "somewhat limited." Griffin was before the court to determine only whether a minor change to his exceptionally high offender score would affect the sentences already imposed on concurrent counts. Griffin was able to see and hear the participants, he was able to confer with his lawyer (as the Supreme Court's February 19 order specifically requires), he had a full and meaningful opportunity for allocution, and nothing in the hearing transcript suggests that there were connectivity issues or that the parties expressed difficulty observing or hearing each other or the court. On this record, the use of videoconferencing technology complied with the Supreme Court's February 19 order.

Recent case law sanctioning the use of safety protocols in accordance with the Supreme Court's emergency orders also supports the use of videoconferencing technology here. In *Ferguson*, for example, the trial court implemented specific protocols in the courtroom to ensure the trial proceeded safely "as it was required to do" under the Supreme Court's emergency order. 25 Wn. App. 2d at 738. Division Two of this court concluded that the trial court properly exercised its discretion because the modifications at issue (plexiglass, masks, and dispersing jurors throughout courtroom) were consistent with the requirements of the emergency order in effect and did not prevent communication with Ferguson's attorney and because the impact on Ferguson's rights was not "onerous." *Id*. at 738-39.

We similarly upheld the trial court's decision in *Wade* to allow two witnesses to testify by video due to the risks posed by COVID-19. 534 P.3d at 1229. The court in *Wade* identified relevant considerations including the court's role in the community, its interest in reducing the backlog of pending cases, Wade's desire to proceed to trial, and the health and safety of the witnesses. *Id*. at 1228. The evidence in *Wade* also established that the witnesses involved were particularly vulnerable to contracting the virus. *Id*. In approving the use of videoconferencing technology, we emphasized that "jurors will have an up-close view of the witness," such that their demeanor was "on view while they testified," and they "were cross-examined under oath." *Id.* We also emphasized the critical importance of the Supreme Court's emergency order in effect at the time, which recognized "that courts would need to adopt, modify, or suspend rules . . . during COVID-19." *Id.* at 1231.[6]

The trial court's use of videoconferencing technology at Griffin's resentencing hearing comports with these recent decisions because it was similarly required by the Supreme Court's emergency order in effect at the time. The trial court was in best position to "perceive and structure its own proceedings" based on its unique knowledge of its "own courtroom facilities and resources" and to balance Griffin's right to be present against the risks to public health and safety in light of the conditions in the community and recommendations that existed at the time. *Ferguson*, 25 Wn. App. 2d at 738. The court reasonably exercised its discretion in

---

[6] *See also State v. D.K.*, 21 Wn. App.2d 342, 349-50, 507 P.3d 859 (2022) (upholding trial court's decision that allowing witnesses to testify remotely was necessary upon consideration of emergency order, severity of pandemic conditions, health risks to the particular to the witnesses, and whether "presumption for in-person testimony had been overcome").

deciding that the use of videoconferencing was appropriate given the nature of the hearing, the extent to which Griffin was able to participate by Zoom, and its assessment of the evolving public health risks. The court's decision was not manifestly unreasonable, nor was based on untenable grounds or untenable reasons.

Griffin asserts that physical presence furthers the goals of individualized sentencing, but points to no Washington authority that supports his argument that requiring a defendant to participate remotely, over their objection, amounts to reversible constitutional error where, as here, an emergency order directed the use of remote proceedings for the benefit of public health and safety "whenever appropriate." Instead, Griffin relies on a decision of the Michigan appellate court holding that a felony sentencing proceeding conducted by videoconference violated a Michigan rule of criminal procedure that authorized the use of videoconferencing for sentencing of misdemeanor offenses but not for felonies.[7] He also relies on federal cases that interpret and apply (1) Federal Rule of Criminal Procedure 43, which requires sentencing to take place in person and is generally not waivable,[8] and (2) federal legislation enacted during the COVID-19 pandemic, which made the federal rule waivable under certain limited circumstances.[9] Given the differences in the applicable rules and the prior interpretations of those rules, the cases cited by Griffin are inapposite.

---

[7] *See People v. Heller*, 316 Mich. App. 314, 321, 891 N.W.2d 541 (2016). Griffin also cites *People v. Anderson*, 341 Mich. App. 272, 283, 989 N.W.2d 832 (2022), another Michigan appellate court case applying *Heller* and holding that the use of videoconferencing for a felony sentencing was constitutional error.

[8] *See United States v. Williams*, 641 F.3d 758, 764-65 (6th Cir. 2011).

[9] *See United States v. Fagan*, 464 F. Supp. 3d 427, 433 (D. Me. 2020).

Griffin additionally argues that the trial court failed to follow CrR 3.4(e), which states that certain trial court proceedings "may be conducted by video conference only by agreement of the parties." But a new portion of CrR 3.4(a), adopted in 2021, titled "Presence Defined," now states, "Unless a court order or this rule specifically requires the physical presence of the defendant, the defendant may appear remotely or through counsel." And under CrR 3.4(b), also revised in 2021, a defendant may appear when required to do so either "physically or remotely (in the court's discretion)" at all "[n]ecessary" hearings, including "the imposition of sentence," unless the rules provide otherwise or the defendant is excused or excluded for "good cause shown." Thus, the rules now make clear that the court has discretion regarding whether to require or allow remote appearance at "every stage of the trial" (CR 3.4(b)), so long as the court complies with our Supreme Court's directives and appropriately safeguards the defendant's rights (as occurred here).

But even if the trial court erred, any error is harmless. *Irby*, 170 Wn.2d at 885 (violation of a defendant's right to be present is subject to constitutional harmless error analysis). Division Three's opinion in *State v. Anderson*, 19 Wn. App. 2d 556, 497 P.3d 880 (2021), *review denied*, 199 Wn.2d 1004 (2022), is persuasive on this point. The court in *Anderson* remanded for resentencing after identifying the following errors in Anderson's judgment and sentence: a vague community custody condition, two scrivener's errors, and the imposition of discretionary legal financial obligations. *Id*. at 559. At resentencing, the parties agreed to modifications of the judgment and sentence to address the issues set forth in the court's decision. *Id*. at

560. Resolving Anderson's second appeal, the court concluded that the violation of Anderson's right to confer with counsel at the remand hearing was harmless beyond a reasonable doubt because Anderson received all the relief he requested at the remand hearing, there was nothing to suggest that consultation with Anderson's attorney would have "made a difference," and there was no proper basis to expand the scope of the mandate. *Id*. at 564.

As in *Anderson*, any trial court error here was harmless beyond a reasonable doubt because "there is no plausible basis for additional relief." *Id.* at 558. The trial court reduced Griffin's offender score in accordance with the mandate and the parties' agreement. Griffin had the opportunity to speak on his own behalf and asserted his innocence. And, after having consulted with Griffin, defense counsel advocated for lower sentences on the concurrent counts on several bases. The trial court declined to alter the sentences imposed, and specifically found that the modest reduction of Griffin's offender scores as a result of excising certain prior convictions pursuant to *Blake* did not change its determination as to the appropriate sentences. While we do not revisit whether remand for resentencing was initially warranted, it is now evident that the reduction in Griffin's offender scores does not affect the ranges or the sentences within those ranges. *See State v. Tili*, 148 Wn.2d 350, 358, 60 P.3d 1192 (2003) (resentencing not required based on miscalculated offender score if "the record makes clear that the trial court would impose the same sentence").[10] In these circumstances, there is no further relief Griffin could obtain

---

[10] *See also In re Personal Restraint of Richardson*, 200 Wn.2d 845, 847, 525 P.3d 939 (2022) (judgment and sentence not facially invalid where reduction of offender score after excising conviction invalidated by *Blake* did not reduce standard range and sentence was within that range).

at another resentencing hearing, and any error is thus harmless beyond a reasonable doubt.

B.     Right to Counsel

Next, Griffin argues that the remote procedure here violated his right to counsel.  We disagree.

A criminal defendant is entitled to the assistance of counsel at "critical stages" of litigation.  *State v. Heddrick*, 166 Wn.2d 898, 909-10, 215 P.3d 201 (2009).  This encompasses a right to consult privately with counsel.   *Anderson*, 19 Wn. App. 2d at 562.  Where an alleged violation of the right to confer privately is raised for the first time on appeal, the appellant is not entitled to relief unless the constitutional error is manifest and the error is prejudicial under a constitutional harmless error analysis.  *Id*. at 563-64.

The trial court proceedings here satisfy Griffin's right to privately consult with his attorney.  At the outset of the hearing, Griffin interrupted the prosecutor to inform the court that he had not had a prior opportunity to confer with his attorney and wished to do so before proceeding.  The court paused the hearing for approximately thirty minutes to allow Griffin to confer privately with defense counsel in a "breakout room" utilizing Zoom.   And although Griffin and his attorney were in separate locations during the hearing, Griffin could see, hear, and communicate with his counsel.

These facts differ markedly from those in *Anderson*—cited by Griffin—where the attorney was not visible because he participated by telephone, the court failed to explain to Anderson how he might confer privately with counsel if he wished to do

so, and there was no basis to conclude Anderson knew he could interrupt the proceedings to consult with counsel. *Anderson*, 19 Wn. App.2d at 563. Most importantly, there was nothing in the record in *Anderson* to indicate that Anderson did, in fact, communicate privately with his attorney just before he was resentenced. Here, in contrast, Griffin was able to request a pause in the proceedings and confer privately with counsel. *Id*. at 562. On this record, there is no manifest constitutional error.

C.      Right to Appear Free from Restraint

Relying on *State v. Jackson*, 195 Wn.2d 841, 850, 467 P.3d 97 (2020), Griffin contends that, "[l]ike the shackling of a defendant in a courtroom," requiring him to appear remotely from prison via Zoom deprived him of the right to appear free from restraint. A criminal defendant is entitled to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington State Constitution. *Id*. at 852. To ensure that right, "'a defendant in a criminal case is entitled to appear at trial free from all bonds or shackles except in extraordinary circumstances.'" *Id*. (quoting *State v. Finch*, 137 Wn.2d 792, 842, 975 P.2d 967 (1999) (plurality opinion)). As *Jackson* also confirms, "We generally review alleged constitutional violations de novo." *Id*. at 850.

Beyond asserting that prison itself is "perhaps the most complete form of restraint," Griffin does not attempt to explain why *Jackson* is applicable when there is nothing in the record to suggest that Griffin was physically restrained in any manner during the resentencing hearing. We reject Griffin's attempt to extend *Jackson* to prohibit a defendant's participation in criminal proceedings by

12

videoconference from prison. Nor does Griffin cite any cases establishing that appearing remotely from prison by videoconference is tantamount to shackling. Where, as here, "a party cites no authorities supporting [their] argument, we may assume that counsel searched diligently and found none." *Carter v. State by & through Dep't of Soc. & Health Servs.,* 26 Wn. App. 2d 299, 317, 526 P.3d 874 (2023). This argument thus fails.

D.      Order Modifying Judgment and Sentence

Lastly, Griffin argues that, upon resentencing, the trial court was required to enter a new judgment and sentence instead of an order modifying the sentence. Again, we disagree.

Griffin relies on RCW 9.94A.480(1), which provides in relevant part as follows:

> A current, newly created or reworked judgment and sentence document for each felony sentencing shall record any and all recommended sentencing agreements or plea agreements and the sentences for any and all felony crimes kept as public records under RCW 9.94A.475 shall contain the clearly printed name and legal signature of the sentencing judge.

Interpretation of a statute is a question of law that we review de novo. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). We first look to the plain meaning of the statute, and if the plain language is unambiguous our inquiry ends. *Id*.

According to Griffin, RCW 9.94A.480(1) requires that all terms of a judgment and sentence must be included in a single final judgment and does not permit the use of short orders to amend portions of an existing judgment and sentence. This argument fails because RCW 9.94A.480(1) addresses the content, not the form, of

13

a judgment and sentence. Nothing in the statute requires an entirely new judgment and sentence each time the document is amended or corrected. To the contrary, the inclusion of the language "*reworked* judgment and sentence" indicates the legislature contemplated amending a judgment and sentence in some circumstances. RCW 9.94A.480(1) (emphasis added). The language of the statute does not support Griffin's argument.

We likewise reject Griffin's argument that the order modifying his sentence is "confusing and imprecise," such that it is unlikely that the Department of Corrections will be able to accurately calculate his sentence. The order removes three prior convictions of possession of a controlled substance that were previously included in Griffin's criminal history and attaches an amended statement of Griffin's criminal history that reflects the removal. The order also includes amended sentencing information, which reflects the changes in Griffin's offender scores resulting from the removal of three convictions. Finally, the order sets forth the sentences imposed on each of the six counts. The order is sufficiently clear and precise, and the trial court did not err by entering the order to modify Griffin's sentence.

Affirmed.

Feldman, J.

WE CONCUR:

Birk, J.

Dwyer, J.

14