IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  39754-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| SHAWNDRAE DON-L HUFF, | ) | |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Shawndrae Don-L Huff was convicted of five counts of assault in

the first degree, one count of unlawful possession of a firearm in the first degree, and

one count of drive-by shooting.  Although he was found to be indigent, the court ordered

Mr. Huff to pay a victim penalty assessment (VPA).

Mr. Huff appeals, arguing that recent changes in the law prohibit the court from

ordering a VPA against an indigent defendant.  Mr. Huff also raises numerous issues in a

statement of additional grounds for review (SAG).  We affirm Mr. Huff's convictions but

remand for the limited purpose of striking the VPA.

BACKGROUND

On July 30, 2022, Mr. Huff went to an apartment in Moses Lake, Washington, to locate Austin Bennett, a man with whom Mr. Huff had been exchanging threatening text messages. After receiving no response at the apartment, Mr. Huff went to a nearby park in response to a text message invitation from Mr. Bennett to meet him there. Mr. Huff later returned to the apartment, got out of the passenger side of a van, and began shooting toward the apartment. Mr. Bennett, along with three other adults and a child, were inside the apartment at the time of the shooting.

Mr. Huff was later interviewed by law enforcement personnel. Although he denied being involved in the shooting, Mr. Huff admitted he wanted to fight Mr. Bennett. Mr. Huff provided an officer with a written statement.

Two days after the shooting, Mr. Huff was charged with five counts of assault in the first degree, one count of unlawful possession of a firearm in the first degree, and one count of drive-by shooting. Before trial, the State offered to dismiss the five assault charges and the drive-by shooting charge if Mr. Huff would plead guilty to unlawful possession of a firearm in the first degree. The State would recommend 87 months of incarceration if Mr. Huff accepted the offer. Mr. Huff rejected the State's offer, instead opting for a bench trial.

Before trial, in a document entitled "STIPULATION FOR THE ADMISSION OF DEFENDANT'S STATEMENTS," Mr. Huff agreed the statements made to the

investigating officers "were made with the defendant's knowledge of his/her constitutional rights pursuant to [*Miranda*[1]] and with the defendant waiving his/her rights; and that the statements were freely and voluntarily given." Clerk's Papers (CP) at 16.

Among other witnesses, Corporal Tyler St. Onge testified at trial. Corporal St. Onge testified his body-worn camera recorded his interview of Mr. Huff. After the State moved to admit the video, Mr. Huff's attorney requested to voir dire Corporal St. Onge. Thereafter, Mr. Huff moved to exclude the video recording, arguing it did not conform with state statutory requirements for recording conversations between law enforcement and those in custody.[2] The court disagreed and admitted the recording. The recording was then published.

Ten minutes into the video, Mr. Huff's attorney requested the recording be paused because Mr. Huff had not been provided his *Miranda* warnings by that point in the video. Mr. Huff also claimed the stipulation was intended only for the admissibility audio recording of his statements, not the video. The court agreed the video recording was not admissible, but the audio was admissible due to the stipulation. The court stated it would not consider the video but allowed the remainder of the audio to be played.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] *See* RCW 9.73.090.

Ultimately, the court found Mr. Huff guilty of five counts of assault in the first degree, one count of unlawful possession of a firearm in the first degree, and one count of drive-by shooting. Mr. Huff was sentenced to a total of 300 months of incarceration and, although indigent, was ordered to pay a VPA.

Mr. Huff timely appeals.

## ANALYSIS

VICTIM PENALTY ASSESSMENT

Mr. Huff requests we remand his case for the trial court to strike the VPA from his judgment and sentence. The State concedes.

Former RCW 07.68.035(1)(a) (2018) required a VPA be imposed on any individual found guilty of a crime in superior court. In April 2023, the legislature passed Engrossed Substitute H.B. 1169 (H.B. 1169), 68th Leg., Reg. Sess. (Wash. 2023), that amended RCW 07.68.035 to prohibit the imposition of the VPA on indigent defendants. RCW 07.68.035 (as amended); LAWS OF 2023, ch. 449 § 1. H.B. 1169 took effect on July 1, 2023. Amendments to statutes that impose costs upon convictions apply prospectively to cases pending on appeal. *See State v. Ramirez*, 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018).

Because Mr. Huff's case is pending on direct appeal, the 2023 amendment applies. At sentencing, the trial court found Mr. Huff to be indigent. RCW 10.01.160(3)(c).

4

No. 39754-8-III
*State v. Huff*

Accordingly, we remand for the limited purpose of striking the VPA from Mr. Huff's judgment and sentence.

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

RAP 10.10(a) allows an appellant to "file a pro se statement of additional grounds for review to identify and discuss those matters related to the decision under review." The purpose of a SAG is to "identify and discuss those matters related to the decision under review that the defendant believes have not been adequately addressed by the brief filed by the defendant's counsel." RAP 10.10(a).

In his first SAG, Mr. Huff argues the trial court abused its discretion by allowing the video recording of his interview to be played, violating his Fifth Amendment to the United States constitution right against self-incrimination. We disagree.

We review the trial court's evidentiary rulings for an abuse of discretion. *City of Seattle v. Pearson*, 192 Wn. App. 802, 817, 369 P.3d 194 (2016). "A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *State v. Griffin*, 30 Wn. App. 2d 164, 529, 544 P.3d 524, *review denied,* 554 P.3d 1227 (Wash. 2024).

The parties stipulated to the admission of Mr. Huff's statements. The stipulation was signed by Mr. Huff, his attorney, and the deputy prosecuting attorney. Any error alleged by Mr. Huff was invited by him. To the extent Mr. Huff complains of the 10

5

minutes of video that was played during trial, the trial court declared it would not consider the video.

The invited error doctrine prohibits a defendant from "'setting up an error at trial and then complaining of it on appeal.'" *State v. Wakefield*, 130 Wn.2d 464, 475, 925 P.2d 183 (1996) (quoting *State v. Pam*, 101 Wn.2d 507, 511, 680 P.2d 762 (1984)). The invited error doctrine applies when a party "'takes affirmative and voluntary action that induces the trial court to take an action that party later challenges on appeal.'" *Hymas v. UAP Distrib., Inc.*, 167 Wn. App. 136, 148, 272 P.3d 889 (2012) (quoting *Lavigne v. Chase, Haskell, Hayes & Kalamon, P.S.*, 112 Wn. App. 677, 681, 50 P.3d 306 (2002)).

Mr. Huff's argument is precisely what the invited error doctrine aims to prevent. At trial, Mr. Huff objected to the admission of the recording based on the absence of *Miranda* warnings. However, the court found that "[a]ny issue of *Miranda* . . . was waived" by the stipulation. Rep. of Proc. (RP) at 333. Mr. Huff cannot challenge on appeal the admission of evidence he earlier stipulated to. Thus, the trial court did not abuse its discretion by permitting the State to play the audio recording of Mr. Huff's interview.

In his second SAG, Mr. Huff argues the proceedings were infected by systemic racism. He argues the State erroneously charged him with "five first degree assaults and a drive by shooting after offering [him a plea to] one count of unlawful possession of a

firearm." SAG at 6. He also argues an *Anders*[3] brief is appropriate under the circumstances. We disagree with both arguments.

First, Mr. Huff argues the proceedings were affected by systemic racism, yet he does not describe how. He complains of the racial makeup of Ephrata, Washington, but does not explain how it affected his verdict. Indeed, Mr. Huff waived his right to be tried by a jury and instead elected to have a bench trial. It is therefore unclear how the racial makeup of Ephrata, Washington, or Grant County in general, are relevant.

Second, Mr. Huff argues that although the court found he "met the exception to RCW 9.94A.535" it failed to exercise its discretion to impose an exceptional sentence below the standard range. SAG at 6. RCW 9.94A.535(1) allows the court to consider "mitigating circumstances" when imposing a sentence. If the sentencing court finds mitigating circumstances, it "may impose an exceptional sentence below the standard range." RCW 9.94A.585(1).

Here, the court did find "mitigating circumstances that allow for an exceptional sentence below the standard range." RP at 918. The court found the standard range for count 2 (assault in the first degree) was "two hundred and forty to three hundred and eighteen" months. RP at 919. Considering the mitigating circumstances, the court determined neither the low end nor the high end was appropriate:

---

[3] *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

> Based on your history, based on the facts of this case, I don't think that the high end is appropriate. I don't think the low end is appropriate. I've already found the exceptional circumstances.
>
> I am going to sentence you for a total of—I'm going to find that Counts 1—basically, they're all going to run concurrent and *I'm going to do that under the statute that allows me to depart from the guidelines* and I am going to sentence you to a total of three hundred months of DOC with thirty-six months of community custody.

CP at 919 (emphasis added).

In sentencing Mr. Huff, the court *did* exercise its discretion and elected not to sentence him to the high end of the standard range and to run all of his sentences concurrently. Thus, Mr. Huff's argument that the court did not exercise its discretion during sentencing fails.

Lastly, Mr. Huff argues his appellate counsel should have filed an *Anders* brief. When appellate counsel is appointed to represent a criminal defendant, counsel may only withdraw with the court's permission. RAP 18.3(a)(1). If appellate counsel finds no basis for a good faith appeal, counsel may file a request to withdraw, known as an *Anders* brief. RAP 18.3(1), (2); *State v. Hairston*, 133 Wn.2d 534, 536-37, 946 P.2d 397 (1997). "In such situation the court may relieve counsel and either dismiss the appeal or leave the indigent to proceed pro se; however, the court must first ascertain that the appeal is in fact frivolous lest it deny the defendant his constitutional right to appeal." *Hairston*, 133 Wn.2d at 537.

Mr. Huff requests that this court "make an independent inquiry into the facts and circumstances of this case through the lens of systemic racism." SAG at 8. However, Mr. Huff's counsel did not request to withdraw or file an *Anders* brief. Instead, appellate counsel filed a brief successfully challenging imposition of the VPA. If Mr. Huff is unhappy with his appellate counsel's performance, he may raise this issue in a personal restraint petition.

CONCLUSION

We affirm Mr. Huff's judgment and sentence but remand for the limited purpose of striking the VPA.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Fearing, J.

_____
Pennell, J.

9