# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TRENITY D. HELLER,

Defendant-Appellant.

FOR PUBLICATION
July 14, 2016
9:10 a.m.

No. 326821
Hillsdale Circuit Court
LC No. 14-383395- FH

Before: STEPHENS, P.J., and BECKERING and GLEICHER, JJ.

PER CURIAM.

Defendant Trenity D. Heller pleaded guilty to possession of methamphetamine, MCL 333.7403(2)(b)(*i*). The trial court sentenced Heller by videoconference, with Heller located in the county jail. Heller's counsel was present in the courtroom but raised no objection to his client's physical absence. The sentence imposed departed substantially from the guidelines recommendation.

Sentencing by videoconference plainly contravenes MCR 6.006, which identifies the criminal proceedings in which two-way interactive video technology may be used. Felony sentencing is not one of them. We remand for resentencing consistent with this opinion.

I

The prosecutor charged Heller with operating or maintaining a methamphetamine laboratory, MCL 333.7401c; possession of methamphetamine; and possession of marijuana, MCL 333.7403. Immediately after his videoconferenced arraignment from the jail, Heller pleaded guilty to possession of methamphetamine. In exchange for this plea the prosecutor promised to dismiss the other two counts and a pending district court case, and to withhold an habitual offender charge. MCR 6.006(A) permits courts to use two-way interactive video technology during "initial arraignments on the warrant or complaint" and "pleas."

The trial court also conducted Heller's sentencing by videoconference. Heller was not advised that he had an option to appear personally. Nor did the court offer Heller an opportunity to privately communicate with counsel during the hearing. Heller's lawyer informed the court that he had met with Heller a few days earlier to go over the presentence information report, which had not yet arrived at the jail. Counsel stated: "I assume that he has now received it[.]" The court made no effort to confirm counsel's assumption.

-1-

Heller's sentencing guideline score placed him in a minimum sentencing guidelines range of 0 to 17 months. The trial court sentenced him to 30 to 120 months' imprisonment, justifying the departure and its extent on Heller's lengthy offense history, his engagement in the manufacture of methamphetamine, and his persistent drug abuse. Heller's delayed application for leave to appeal advanced both procedural and substantive complaints concerning his sentence. We granted leave as to both. *People v Heller*, unpublished order of the Court of Appeals, entered May 22, 2015 (Docket No. 326821).

II

We first consider Heller's challenge to the length of his sentence. The trial court sentenced Heller before our Supreme Court decided *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). In *Lockridge*, the Court directed that "[a] sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *Id*. at 392. In *People v Steanhouse*, 313 Mich App 1, 48; ___ NW2d ___ (2015), this Court held that implementation of the reasonableness standard requires remand for consideration of the sentence's proportionality pursuant to *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), following the remand procedure adopted in *United States v Crosby*, 397 F3d 103 (CA 2, 2005). Given *Steanhouse*'s directive, the trial court must be permitted to reconsider defendant's sentence in the light of *Milbourn*. Heller may avoid reconsideration of his sentence if he chooses, consistent with *Crosby*.

III

Should Heller elect to be resentenced, he must be physically present in the courtroom.

MCR 6.006(A) catalogs the proceedings in which two-way interactive video technology may be used in Michigan courts. Listed are: "initial arraignments on the warrant or complaint, probable cause conferences, arraignments on the information, pretrial conferences, pleas, sentencings for misdemeanor offenses, show case hearings, waivers and adjournments of extradition, referrals for forensic determination of competency, and waivers and adjournments of preliminary examinations." Felony sentencing is not on the list.

"The express mention of one thing in a statute implies the exclusion of other similar things." *In re MCI Telecom Complaint*, 460 Mich 396, 415; 596 NW2d 164 (1999). We apply the same interpretive principle to court rules. *People v Buie*, 491 Mich 294, 304; 817 NW2d 33 (2012). By carefully delineating the proceedings amenable to the employment of two-way interactive video technology, the Supreme Court has telegraphed that this means of communication may not be used elsewhere.

Why did the Supreme Court omit felony sentencings from MCR 6.006(A)? Presumably because sentencing is a critical stage of a criminal proceeding at which a defendant has a constitutional right to be present, *People v Mallory*, 421 Mich 229, 247; 365 NW2d 673 (1984), and virtual appearance is not a suitable substitute for physical presence. "The imposition of punishment in a criminal case affects the most fundamental human rights: life and liberty." *United States v Villano*, 816 F2d 1448, 1452 (CA 10, 1987) (en banc). Our court rules and common law invest sentencing with profound significance, for this grave moment in the criminal

process often seals a defendant's fate or dictates the contours of his future. Individualized sentencing furthers the goal of rehabilitation by respecting the inherent dignity of each person the law deprives of freedom, civil rights, or property. *People v Triplett*, 407 Mich 510, 515; 287 NW2d 165 (1980). A defendant's right to allocute before sentence is passed—to look a judge in the eye in a public courtroom while making his plea—stems from our legal tradition's centuries-old recognition of a defendant's personhood, even at the moment he is condemned to prison. Sentencing is "an intensely human process—after all, we are dealing not with machines and equipment, but with human lives." *United States v Davern*, 970 F2d 1490, 1516 (CA 6, 1992) (JONES, J., dissenting).

Undoubtedly, two-way interactive video technology saves courts money and time, and dramatically lessens security concerns. But in the felony sentencing context, it is simply inconsistent with the intensely personal nature of the process. After all, "[s]entencing is the point where the heart of the law—and its human face—is most clearly revealed." Weinstein, *The Role of Judges in a Government Of, By, and For the People: Notes for the Fifty-Eighth Cardozo Lecture*, 30 Cardozo L Rev 1, 179 (2008). Sentencing by video dehumanizes the defendant who participates from a jail location, unable to privately communicate with his or her counsel and likely unable to visualize all the participants in the courtroom. Moreover, a courtroom "is more than a location with seats for a judge, jury, witnesses, defendant, prosecutor, defense counsel and public observers[.]" *Estes v Texas*, 381 US 532, 561; 85 S Ct 1628; 14 L Ed 2d 543 (1965) (WARREN, C.J., concurring). The courtroom setting provides "a dignity essential" to the process of criminal adjudication. *Id*. Isolating a defendant from that setting during what may be the most decisive moment of his life clashes with the judge's duty to acknowledge the humanity of even a convicted felon.

Canadian philosopher Marshall McLuhan's famous quote, "the medium is the message," bears relevance to this discussion. In McLuhan's words:

> [I]t is the medium that shapes and controls the scale and form of human association and action. The content or uses of such media are as diverse as they are ineffectual in shaping the form of human association. Indeed, it is only too typical that the "content" of any medium blinds us to the character of the medium. [McLuhan, *Understanding Media: The Extensions of Man* (Cambridge: MIT Press, 1994), p 9.].

The medium itself—here, videoconferencing from a jail—delivers content of its own. That content, in turn, influences the perceptions of the participants. Abundant social science research demonstrates that video conferencing "as a mediating technology" may color a viewer's assessment of a person's credibility, sincerity, and emotional depth. Some studies suggest that "individuals who appear in court via video conferencing are at risk of receiving harsher treatment from judges or other adjudicators." Salyzyn, *A New Lens: Reframing the Conversation about the*

*Use of Video Conferencing in Civil Trials in Ontario*," 50 Osgoode Hall L J 429, 447 (2012).[1] Courts, too, have recognized that "virtual reality is rarely a substitute for actual presence and . . . even in an age of advancing technology, watching an event on a screen remains less than the complete equivalent of actually attending it." *United States v Lawrence*, 248 F3d 300, 304 (CA 4, 2001). Alternatively phrased, "In the most important affairs of life, people approach each other in person, and television is no substitute for direct personal contact. Videotape is still a picture, not a life . . . ." *Stoner v Sowders*, 997 F2d 209, 213 (CA 6, 1993).

Sentencing is more than a rote or mechanical application of numbers to a page. It involves a careful and thoughtful assessment of "the true moral fiber of another," *Del Piano v United States*, 575 F2d 1066, 1069 (CA 3, 1978), a task made far more complex when the defendant speaks through a microphone from a remote location. The trial judge who sentenced Heller never met or sat in the same room with him. In our view, Heller's absence from the sentencing nullified the dignity of the proceeding and its participants, rendering it fundamentally unfair.

We remand for resentencing at Heller's option. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Jane M. Beckering
/s/ Elizabeth L. Gleicher

---

[1] This article offers a thorough and insightful discussion of the unintended, negative effects of video conferencing in the legal world.