*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
March 31, 2022

Plaintiff-Appellee,

v

No. 356731
Ionia Circuit Court
LC No. 2020-018027-FH

CARL LEE HARBENSKI,

Defendant-Appellant.

Before: O'BRIEN, P.J., and SHAPIRO and BOONSTRA, JJ.

PER CURIAM.

Defendant pleaded no contest to first-degree home invasion, MCL 750.110a(2), and assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84. At a sentencing hearing conducted via two-way interactive videoconference technology, the trial court sentenced defendant, as a third-offense habitual offender, MCL 769.11, to serve concurrent terms of 20 to 40 years' imprisonment for the home-invasion conviction and 13 to 20 years' imprisonment for the AWIGBH conviction. Defendant appeals by delayed leave granted.[1] We affirm the scoring of the sentencing guidelines, but remand for in-person resentencing.

## I. BACKGROUND

Defendant pleaded no contest to home invasion and AWIGBH. The basis for the charges was evidence that around 3:45 a.m. on February 2, 2020, defendant broke into Theresa Lilly's home while Lilly, her daughter and son-in-law—Nicole Ralph and Gregory Ralph—and the Ralphs' grandchildren were sleeping. When Nicole opened her bedroom door to investigate a sound that woke her up, she saw defendant going through her purse. Defendant then charged at Nicole, tackled her, and punched her in the head. After Gregory began fighting with defendant, Nicole attempted to disarm a knife from defendant and screamed for Lilly to call the police. At

---

[1] *People v Harbenski*, unpublished order of the Court of Appeals, entered May 5, 2021 (Docket No. 356731).

some point during the fight, defendant stabbed Gregory multiple times. Defendant left the home after Nicole told him he could leave if he just let her and Gregory go.

The trial court held defendant's sentencing hearing on April 29, 2020, via videoconference because of the public health concerns associated with the COVID-19 pandemic, but did not obtain a waiver of defendant's right to be physically present in the courtroom for sentencing. At sentencing the parties disputed the scoring of offense variable (OV) 10, MCL 777.40 (exploitation of a vulnerable victim). The prosecution argued that the trial court should assess 5 points for OV 10 because defendant broke into the home while individuals were sleeping inside. Defendant argued that no points should be assessed because OV 10 is typically scored for assaultive offenses, not home-invasion offenses, and Gregory was awake when defendant assaulted him. The trial court noted the Ralphs were sleeping when the home invasion occurred and, therefore, assessed 5 points for OV 10 when computing defendant's minimum sentence guidelines range for his home-invasion conviction.

The Ralphs and Lilly then gave statements detailing how defendant's conduct stole their sense of security and left the family with lasting emotional harm. During his allocution, defendant apologized to the Ralphs and Lilly for his conduct, explaining that he broke into the home to try to find a way to pay his rent. The trial court sentenced defendant to the top of the sentencing guidelines.[2]

After sentencing, defendant filed a motion to correct an invalid sentence and for resentencing. Defendant reiterated his arguments regarding OV 10, but also contended that the trial court violated his right to be physically present at sentencing because the court did not provide him the opportunity to waive that right.

After a hearing on defendant's motion, the trial court again concluded that defendant exploited vulnerable victims during the home invasion and was properly assessed 5 points for OV 10. As it pertained to the lack of in-person sentencing, the court reasoned that defendant made no objection to the format even after the court coordinated defendant's appearance at the videoconference sentencing with defendant's counsel. Accordingly, the court denied defendant's motion for resentencing.

## II. DISCUSSION

### A. OV 10

Defendant first argues that the trial court erred by assessing 5 points for OV 10. We disagree.[3]

---

[2] Defendant had a *Killebrew* agreement to sentencing within the guidelines range.

[3] The trial court's factual findings under the sentencing guidelines must be supported by a preponderance of the evidence, and we review those findings for clear error. See *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left

OV 10 of the sentencing guidelines addresses the exploitation of vulnerable victims. MCL 777.40(1). OV 10 instructs a trial court to assess no points when the defendant "did not exploit a victim's vulnerability," MCL 777.40(1)(d), and to assess 5 points when the defendant "exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious," MCL 777.40(1)(c). Under OV 10, exploit means "to manipulate a victim for selfish or unethical purposes," MCL 777.40(3)(b), and vulnerability means "the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation," MCL 777.40(3)(c). Defendant argues that the trial court erred by assessing 5 points under OV 10 because Gregory was awake and conscious when defendant assaulted him and therefore defendant did not exploit a vulnerable victim.

Defendant's argument is misguided. The trial court specifically noted it was scoring 5 points under OV 10 for the home-invasion conviction, not the AWIGBH conviction. Thus, the question was not whether defendant exploited Gregory during the assault, but rather, whether defendant exploited Lilly and the Ralphs when he broke into the home. There is no dispute that Lilly, the Ralphs, and the Ralphs' grandchildren were sleeping inside the home when defendant broke in around 3:45 a.m. Although that fact "does not *automatically*" render the victims vulnerable, MCL 777.40(2) (emphasis added), home invasions are, presumably, easier to accomplish in the middle of the night precisely because the home's inhabitants are asleep, making them vulnerable to a home invasion. Thus, the trial court did not err by finding that the sleeping victims were vulnerable when defendant broke in because they were more susceptible to home invasion and unable to protect themselves from that crime while they were asleep. Moreover, defendant broke into the home for the "selfish or unethical" purpose of stealing money, likely choosing to do so in the middle of the night to exploit the fact the victims would be sleeping and unable to stop or detect him. MCL 777.40(3)(b). For those reasons, the trial court properly assessed 5 points for OV 10 when computing defendant's minimum sentence guidelines range for the home-invasion conviction.

## B. DEFENDANT'S PHYSICAL PRESENCE AT SENTENCING

Defendant also argues the trial court erred by denying his motion for resentencing because he did not waive his right to be sentenced in person. Defendant acknowledges that our Supreme Court expansively authorized trial courts to conduct proceedings via videoconference during the COVID-19 pandemic, but maintains that the trial court was still required to provide defendant the opportunity to waive his right to be physically present at sentencing or to request an adjournment until sentencing could be done in person. We agree.

Due to the COVID-19 pandemic, our Supreme Court authorized trial courts to conduct all court proceedings via videoconference to the extent consistent with a defendant's constitutional

---

with a definite and firm conviction that a mistake was made." *People v Brooks*, 304 Mich App 318, 319-320; 848 NW2d 161 (2014) (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

rights. Administrative Order No. 2020-6, 505 Mich cxxxiv (2020).[4] However, "sentencing is a critical stage of a criminal proceeding at which a defendant has a constitutional right to be present." *People v Heller*, 316 Mich App 314, 318; 891 NW2d 541 (2016). Additionally, MCR 6.006 prohibits trial courts from conducting a felony sentencing by videoconference. See MCR 6.006(A); *Heller*, 316 Mich App at 315-316. A defendant may waive his right to be present at sentencing, and "[a] valid waiver arises when the defendant specifically knows of the right to be present and intentionally abandons the protection of that right." *People v Palmerton*, 200 Mich App 302, 304; 503 NW2d 663 (1993).

In *Heller*, 316 Mich App at 318-321, this Court explained why felony sentencing is not conducted via videoconference:

> Why did the Supreme Court omit felony sentencings from MCR 6.006(A)? Presumably because sentencing is a critical stage of a criminal proceeding at which a defendant has a constitutional right to be present, and virtual appearance is not a suitable substitute for physical presence. The imposition of punishment in a criminal case affects the most fundamental human rights: life and liberty. Our court rules and common law invest sentencing with profound significance, for this grave moment in the criminal process often seals a defendant's fate or dictates the contours of his or her future. Individualized sentencing furthers the goal of rehabilitation by respecting the inherent dignity of each person the law deprives of freedom, civil rights, or property. A defendant's right to allocute before sentence is passed—to look a judge in the eye in a public courtroom while making his or her plea—stems from our legal tradition's centuries-old recognition of a defendant's personhood, even at the moment he or she is condemned to prison. Sentencing is an intensely human process—after all, we are dealing not with machines and equipment, but with human lives.

> Undoubtedly, two-way interactive video technology saves courts money and time, and it dramatically lessens security concerns. But in the felony sentencing context, it is simply inconsistent with the intensely personal nature of the process. After all, sentencing is the point where the heart of the law—and its human face— is most clearly revealed. Sentencing by video dehumanizes the defendant who participates from a jail location, unable to privately communicate with his or her counsel and likely unable to visualize all the participants in the courtroom. Moreover, a courtroom is more than a location with seats for a judge, jury, witnesses, defendant, prosecutor, defense counsel and public observers. The courtroom setting provides a dignity essential to the process of criminal adjudication. Isolating a defendant from that setting during what may be the most decisive moment of his or her life clashes with the judge's duty to acknowledge the humanity of even a convicted felon.

> \* \* \*

---

[4] The order was entered on April 7, 2020, and later rescinded by an order entered on July 26, 2021.

. . . . Some studies suggest that individuals who appear in court via video conferencing are at risk of receiving harsher treatment from judges or other adjudicators. Courts, too, have recognized that virtual reality is rarely a substitute for actual presence and even in an age of advancing technology, watching an event on the screen remains less than the complete equivalent of actually attending it. Alternatively phrased: In the most important affairs of life, people approach each other in person, and television is no substitute for direct personal contact. Video tape is still a picture, not a life.

Sentencing is more than a rote or mechanical application of numbers to a page. It involves a careful and thoughtful assessment of the true moral fiber of another, a task made far more complex when the defendant speaks through a microphone from a remote location. The trial judge who sentenced Heller never met or sat in the same room with him. In our view, Heller's absence from the sentencing nullified the dignity of the proceeding and its participants, rendering it fundamentally unfair. [Quotation marks, citations, brackets, and ellipses omitted.]

In this case, the prosecution concedes that there was no waiver on the record of defendant's right to be physically present at sentencing. Nor is there a basis in the record to conclude that defendant knew of that right and intentionally relinquished it. The trial court's reasoning for denying defendant's motion for resentencing was that defendant never objected to sentencing via videoconference and that the court worked with defendant's counsel to coordinate defendant's virtual appearance at the videoconference. Defendant's participation in the videoconference hearing, however, is insufficient alone to demonstrate that he voluntarily and knowingly waived his right to be present at sentencing. Thus, the record is silent as to whether defendant specifically knew of his constitutional right to be present at sentencing or whether he intentionally waived that right, and "[a] valid waiver cannot be established from a silent record." *Palmerton*, 200 Mich App at 304. Because defendant did not waive his right to be physically present at sentencing, it was error for the trial court to hold the sentencing hearing via videoconference and inconsistent with defendant's constitutional rights.

The prosecution nonetheless argues that defendant is not entitled to resentencing because he was not prejudiced by the lack of in-person sentencing. This argument implies that plain-error review applies to this issue, and, for purposes of this appeal, we will assume without deciding that it does. Plain error requiring reversal occurs if three requirements are met: "1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement *generally* requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (emphasis added). Additionally, the error must have resulted in the conviction of an actually innocent defendant or seriously affected "the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted).

In *Heller*, 316 Mich App at 321, this Court strongly indicated that the lack of in-person sentencing for felony convictions was a structural error when it stated that sentencing via videoconference renders the sentencing "fundamentally unfair." See *Neder v United States*, 527 US 1, 8; 119 S Ct 1827; 144 L Ed 23 35 (1999) (explaining that a structural error is one that

"affect[s] the framework within which the trial proceeds" and "necessarily render a trial fundamentally unfair[.]") (quotation marks and citation omitted). Considering this statement and *Heller*'s extended discussion on the importance of in-person sentencing, we are compelled to conclude that sentencing via video conference in the absence of a valid waiver is structural, plain error.

Recently, in *People v Davis*, ___ Mich ___; ___ NW2d ___ (2022) (Docket No. 161396), the Supreme Court clarified how to evaluate the third and fourth prong of the plain-error standard with respect to structural errors. Regarding the third prong, the Court held that a showing of prejudice is not required for structural errors because such errors "necessarily affect a defendant's substantial rights." *Id*. at ___; slip op at 16-17. The Court further held that a structural error creates a presumption that the fourth prong is met, i.e., that the error had a serious effect on the fairness, integrity or public reputation of the proceedings. *Id* at ___; slip op at 14. The burden is on the prosecutor to rebut this presumption by bringing forth specific facts demonstrating the overall fairness, integrity and reputation of the proceedings. *Id*. at ___; slip op at 19.

Thus, per *Davis*, defendant's substantial rights were necessarily affected by the structural error in this case and he need not establish that he was prejudiced by not being physically present for sentencing. Further, we must presume that this error seriously affected the fairness, integrity or public reputation of judicial proceedings. The prosecutor does not identify specific facts that cure the fundamental unfairness of defendant being denied his right to be physically present for the sentencing. The prosecutor merely notes that defendant was allowed to speak at the virtual sentencing, and that the trial court and defendant could see each other. However, *Heller* was clear that virtual sentencing is not an adequate substation for the face-to-face interaction between judge. In addition to the dignity afforded to criminal defendants by in-person sentencing, this Court noted research suggesting that "individuals who appear in court via video conferencing are at risk of receiving harsher treatment from judges or other adjudicators." See *Heller*, 316 Mich App at 320 (quotation marks and citations omitted).

In sum, given *Heller*'s conclusion that felony sentencing via videoconference renders the sentence fundamentally unfair, we hold that the lack of in-person sentencing in this case was structural error that affected defendant's substantial rights and seriously affected the integrity and fairness of the judicial proceedings. Accordingly, defendant is entitled to in-person resentencing.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Douglas B. Shapiro