*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HMM, Minor, by Next Friend CM,

Petitioner-Appellee,

v

JS,

Respondent-Appellant.

FOR PUBLICATION
November 18, 2024
11:47 AM

No. 367586
Wayne Circuit Court
LC No. 23-104122-PH

Before: CAMERON, P.J., and JANSEN and SWARTZLE, JJ.

SWARTZLE, J.

Personal-protection orders, often shortened to "PPOs," offer trial courts a critical tool for protecting society's most vulnerable persons. But, as with all critical tools of our constitutional government, PPOs must be used in ways consistent with fundamental notions of due process. Where, as here, the petitioner testified off-camera for no discernible reason; cross examination was curtailed by the circuit court; and, most critically, the circuit court shifted the burden of proof from the petitioner to the respondent, the proceedings lacked the due process needed for continuation of the PPO. As explained here, we vacate the circuit court's order denying respondent's motion to terminate the PPO and remand to that court for a new hearing.

## I. BACKGROUND

In April 2023, petitioner, 17 years old at the time, petitioned the court for an ex parte PPO against respondent, asserting that she had a reasonable apprehension of sexual assault because respondent had sexually assaulted her in "2012 and other times after this." Petitioner described that respondent had touched her inappropriately, at his home and at a restaurant, pulled her underwear back to expose her genitals, and "touched her chest, buttocks, public region and external genitals under her clothing." Petitioner explained that a criminal investigation was pending.

The circuit court entered an ex parte PPO granting the relief requested, prohibiting respondent from various actions, including contacting the petitioner and "purchasing or possessing a firearm." The PPO took immediate effect, to remain effective until April 20, 2024. The order provided that a violation subjected "respondent to immediate arrest and to the civil and criminal contempt powers of the court," including up to 93 days in jail. Further, it directed the court clerk

-1-

to file the order with the Michigan State Police for entry into the Law Enforcement Information Network (LEIN). The order was, accordingly, submitted to LEIN and served on respondent.

Respondent then moved to terminate the PPO, denying that he had ever inappropriately touched petitioner. Petitioner also moved to modify the original PPO, which showed an error in respondent's birthdate, and the circuit court granted petitioner's motion. The corrected PPO provided the same grounds and conditions and was entered into LEIN.

The circuit court subsequently held a hearing on respondent's motion via Zoom. Petitioner was not represented by counsel, and, as the hearing opened, RM, petitioner's father, informed the court that petitioner was in a separate room. The circuit court stated that petitioner needed to be in the room to testify, and RM responded that petitioner was worried about seeing respondent. The circuit court stated that petitioner could turn off her camera. Respondent's counsel requested instead that respondent be seated off-camera, while petitioner remained on-camera so that they and the court could see her while she testified. The circuit court denied the request, directing that respondent would be off-camera, and petitioner's camera would be turned off. Respondent's counsel asked why respondent would be off-camera, and the circuit court stated that it was "going to do everything to protect the child." RM then stated that he would get petitioner. CM, petitioner's mother, was also in the room with RM.

The circuit court asked petitioner to identify herself, which she did. The circuit court asked why petitioner did not want the PPO terminated. The petitioner responded, "I feel like it's fair considering I recently just came out about what happened to me when I was a child." Petitioner stated that she wanted the protection while the investigation was ongoing, and she did not "think it's like wrong to not want to be, you know, reached out to by him whatsoever." The circuit court asked from what petitioner needed to be protected, and petitioner stated that she did not want respondent to contact her.

When respondent's counsel asked petitioner to explain what happened to her, petitioner stated that she did not "want to talk about that right now." RM began to speak, and the circuit court told him that he could not testify. The circuit court then interceded and asked petitioner, "Was there a sexual assault?" Petitioner responded, "Yeah."

Respondent's counsel asked petitioner when the sexual assault occurred. Petitioner stated that she could not remember, but that it happened "a few times when [she] was younger." Petitioner explained,"It's kind of hard to remember when you were seven years old and like around that age and it happened often enough where I thought it was a normal event at the time. It wasn't until I was older that I realized that it was—that something wrong was happening to me."

Respondent's counsel asked how old petitioner was when the abuse began, and the circuit court answered, "She just said it." Petitioner stated that it occurred when she was around seven years old, but she could not say the exact age.

The circuit court then asked respondent's counsel what respondent would like to tell the court because "[t]he burden" had shifted to him. Respondent's counsel stated that she wanted to question petitioner about what happened, noting that petitioner had not even identified her assailant. The circuit court asked petitioner who sexually assaulted her. RM explained that

petitioner was "having a very hard time right now" and that petitioner had given a complete statement at "Care House," witnessed by a detective. The circuit court then asked if the person who had assaulted petitioner was a family member. Petitioner asked, "What?" RM repeated the court's question, and the circuit court stated that petitioner had to state the name of the person. Eventually petitioner identified the assailant as her uncle, respondent.

Respondent's counsel began to ask another question, but the circuit court stated, "Counsel, that's going to be all the questions we're going to ask with regard to that. You know what the burden of proof is in this." Respondent's counsel asserted that petitioner had not testified about what respondent had done, and the circuit court stated, "It's enough for this court." The circuit court explained, "So, what is it that your client now would like—what is it that—it's now his burden of proof. We're done with the questioning."

Respondent's counsel objected "to the lack of questioning," arguing that respondent had "not even heard an allegation in terms of what it is that he supposedly did." Respondent's counsel argued that she wanted to continue the questioning so that respondent would have notice about why they were there. The circuit court overruled the objection and noted again for the third time that the burden of proof had shifted to respondent. Respondent's counsel stated that they did not have further evidence to present, and the circuit court denied respondent's motion to terminate the PPO.

Respondent now appeals.

## II. ANALYSIS

Respondent challenges the denial of his motion to terminate the PPO. Matters involving a PPO are equitable in nature, and this Court reviews for an abuse of discretion a circuit court's decision with respect to a PPO. *TT v KL*, 334 Mich App 413, 438; 965 NW2d 101 (2020). "A court necessarily abuses its discretion when it makes an error of law. Factual findings underlying a PPO ruling are reviewed for clear error. This Court reviews de novo constitutional issues." *Id.* (citations omitted).

Although there are several sources of authority for issuance of a PPO, the one here was issued under MCL 600.2950a(2)(b). This provision authorizes a person to seek a PPO if she "has been subjected to, threatened with, or placed in reasonable apprehension of sexual assault by the individual to be enjoined. A court shall not grant relief under this subdivision unless the petition alleges facts that demonstrate that the respondent has perpetrated or threatened sexual assault against the petitioner." MCL 600.2950a(2)(b). Further, if the petitioner establishes through verified complaint, written petition, or affidavit that she is entitled to the relief sought, the court must enter the PPO on an ex parte basis, i.e., without notice to the respondent, "if immediate and irreparable injury, loss, or damage will result from the delay required to effectuate notice or that the notice will itself precipitate adverse action before a [PPO] can be issued." MCR 3.705(A)(2). A respondent may move to terminate an ex parte PPO and request a hearing within 14 days after being served with, or receiving notice of, the PPO. MCR 3.707(A)(1)(b). The court must hold a hearing on a motion to terminate a PPO within 14 days of the filing of the motion. MCR 3.707(A)(2).

As an initial matter, although the record does not indicate whether the PPO was extended after its expiration date of April 20, 2024, this appeal is not moot because both the original and corrected PPOs were entered into LEIN. See MCL 600.2950a(16) and (17). Entry of an improperly issued PPO into LEIN presents a live controversy. See *TM v MZ*, 501 Mich 312, 319-320; 916 NW2d 473 (2018).

## A. PRESERVATION

To preserve an issue for appellate review, a party must raise the issue in the trial court on the same basis claimed on appeal. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 2-3. Respondent preserved his due-process challenge to the circuit court's denial of his right to cross-examine petitioner by arguing for the opportunity to question petitioner so that respondent would have notice about the accusations against him. Although counsel did not specifically say the phrase, "due process," the issue of notice is at the core of due-process. See *Bonner v City of Brighton*, 495 Mich 209, 235; 848 NW2d 380 (2014).

Respondent did not, however, object to the circuit court's shift of the burden of proof to respondent. Further, although respondent requested that petitioner remain on-camera, respondent did not raise a due-process challenge to the circuit court's instruction that petitioner testify off-camera. This Court recently held that our Supreme Court precedent requires that, in general civil cases, we apply the raise-or-waive rule and, thus, the plain-error standard does not apply in those cases. *Tolas Oil & Gas Exploration Co*, ___ Mich App at ___; slip op at 5. We excluded from that holding, however, "termination of parental rights cases, which present different constitutional considerations." *Id*. at ___; slip op at 5 n 3. We further noted that our Supreme Court has recognized the need for plain-error review in criminal appeals, as opposed to civil cases involving, for example, money judgments. *Id*. ___; slip op at 4. See *Napier v Jacobs*, 429 Mich 222, 234; 414 NW2d 862 (1987).

PPO proceedings are civil in nature. With that said, because of the potential criminal consequences for a respondent's violation of a PPO, and the liberty interests at stake, we conclude that plain-error review also applies to unpreserved issues in PPO proceedings. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 774.

## C. DUE PROCESS

The heart of this appeal is due process. "Due process requires fundamental fairness, which is determined in a particular situation first by considering any relevant precedents and then by assessing the several interests that are at stake." *In re Brock*, 442 Mich 101, 111; 499 NW2d 752 (1993) (cleaned up). Due-process protections apply to proceedings on a motion to terminate a PPO. See *JLS v HRS*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368375); slip op at 4-5; *CAJ v KDT*, 339 Mich App 459, 468; 984 NW2d 504 (2021). "[A]t a minimum, due process of law requires that deprivation of life, liberty, or property by adjudication must be

preceded by notice and an opportunity to be heard." *Bonner*, 495 Mich at 235 (citation omitted). An "opportunity to be heard 'must be granted at a meaningful time and in a meaningful manner.'" *Id.*, quoting *Armstrong v Manzo*, 380 US 545, 552; 85 S Ct 1187; 14 L Ed 62 (1965). Although the opportunity to be heard does not always require a full trial-like proceeding, a party must be given "the chance to know and respond to the evidence." *Galien Twp Sch Dist v Dep't of Ed*, 310 Mich App 238, 243; 871 NW2d 382 (2015) (cleaned up).

Respondent takes issue with three specific aspects of the circuit court's hearing on his motion to terminate the PPO—(1) petitioner's off-camera testimony; (2) the curtailment of cross examination; and (3) the shifting of the burden of proof. Together, he argues, these three aspects of the hearing undermined his right to due process. We consider each in turn.

### 1. PETITIONER'S OFF-CAMERA TESTIMONY

Beginning with the off-camera testimony: Petitioner was the sole witness to testify at the hearing, and her credibility was crucial to determine whether to grant respondent's motion to terminate the PPO. "The credibility of a witness is determined by more than words and includes tonal quality, volume, speech patterns, and demeanor, all giving clues to the factfinder regarding whether a witness is telling the truth." *Shuler v Mich Physicians Mut Liability Co*, 260 Mich App 492, 519; 679 NW2d 106 (2004) (citation omitted). Typically, the trial court has an advantage in determining the weight and credibility of a witness's testimony, and we give regard to that opportunity to judge credibility. See *SP v BEK*, 339 Mich App 171, 176; 981 NW2d 500 (2021). See also MCR 2.613(C). Here, however, the circuit court limited its own ability to judge petitioner's demeanor when it allowed her to testify off-camera.

As this Court has previously explained, "Abundant social science research demonstrates that video conferencing as a mediating technology may color a viewer's assessment of a person's credibility, sincerity, and emotional depth." *People v Heller*, 316 Mich App 314, 320; 891 NW2d 541 (2016) (cleaned up). This risk was compounded here when the circuit court intentionally limited itself to listening to petitioner's testimony, prohibiting itself from judging petitioner's physical demeanor via the video feed.

It also appears that at least one of petitioner's parents was in the room with her while she testified. Allowing petitioner to testify off-camera may have prevented respondent and the circuit court from viewing any interactions between petitioner and those present with her during her testimony. The circuit court indicated that its intent was to protect petitioner, a 17-year-old minor. But respondent was also off-camera, so it is unclear how petitioner being off-camera further protected her.

In *Maryland v Craig*, 497 US 836, 840, 857-858; 110 S Ct 3157; 111 L Ed 2d 666 (1990), the United States Supreme Court held that a child victim in a child-abuse prosecution could testify outside the presence of the defendant without violating the Confrontation Clause when a proper finding of emotional necessity was made, and the child testified under oath, underwent a full cross-examination, and was observable by the judge, jury, and defendant. Here, however, there was no express finding that it was necessary for petitioner to testify off-camera and she did not, as further discussed below, undergo a full cross-examination. As our Supreme Court recognized in *People v Jemison*, 505 Mich 352, 356; 952 NW2d 394 (2020), the United States Supreme Court's later

decision in *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004), requiring cross-examination for testimonial evidence in most instances, necessarily narrowed the holding in *Craig*.

Notably, the Confrontation Clause of the Sixth Amendment to the federal Constitution does not apply in noncriminal settings like this one. See *In re Brock*, 442 Mich at 108. With that said, PPO proceedings have significant liberty interests at stake. With the limited testimony and inability of the circuit court to see petitioner, the court did not have the ability to assess petitioner's credibility fully. Nor did respondent's counsel have the opportunity to see petitioner testify and respond accordingly to her demeanor or credibility.

## 2. CROSS-EXAMINATION

Next, the record confirms that the circuit court curtailed respondent's opportunity to cross-examine petitioner. The circuit court denied respondent the opportunity to know and respond to the evidence when, even after petitioner's testimony was brief and vague, the court did not allow respondent to cross-examine her about her allegations. Petitioner stated that it was difficult to remember, but the assaults occurred a "few times" when she was "around" seven years old. When respondent's counsel attempted to elicit further information, the circuit court interjected and told counsel "that's going to be all the questions we're going to ask with regard to that," and stated that counsel knew "what the burden of proof is in this." The circuit court even went so far as to shift the "burden of proof" to respondent, but then exclaimed, "We're done with the questioning."

Due process "mandates an opportunity for the respondent to present evidence at a hearing to terminate a PPO," *JLS*, ___ Mich App at ___; slip op at 5, and this includes the opportunity for meaningful cross examination, 25 Am Jur 2d, Domestic Abuse and Violence, § 20 ("Direct questioning by the respondent is the normal and preferred method of allowing cross-examination in restraining order petitions."). Indeed, "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v Kelly*, 397 US 254, 269; 90 S Ct 1011; 25 L Ed 2d 287 (1970). By depriving respondent of the opportunity to cross-examine petitioner about the alleged sexual assault, the circuit court increased the risk of erroneously depriving respondent of significant liberty interests. Allowing respondent to cross-examine petitioner properly would have diminished that risk.

## 3. BURDEN OF PROOF

Third and finally, the circuit court impermissibly shifted the burden of proof to respondent. "[A] petitioner bears the burden of proof when seeking to obtain an ex parte PPO." *Pickering v Pickering*, 253 Mich App 694, 697; 659 NW2d 649 (2002). Similarly, on a motion to terminate or modify the ex parte PPO, "[t]he burden of proof remains with a petitioner who seeks to establish a justification for the continuance of a PPO." *TT*, 334 Mich App at 439 (internal quotation marks omitted). See also *Pickering*, 253 Mich App at 699; MCR 3.310(B)(5). "In Michigan, there are two aspects of the 'burden of proof'—the burden of persuasion and the burden of going forward with the evidence." *Id*. at 698 (cleaned up). Although the latter burden might shift throughout a proceeding as evidentiary presumptions rise and fall, see *Widmayer v Leonard*, 422 Mich 280,

290; 373 NW2d 538 (1985), the former burden *always* remains with the petitioner, *Pickering*, 253 Mich App at 699.

On this record, it appears clear that the circuit court shifted not just the burden of going forward with evidence, but also the burden of persuasion, from petitioner to respondent. Unlike in *Pickering*, 253 Mich App at 699, the circuit court did not "hear[] all the evidence," but instead, as explained already, the court restricted its own access to petitioner's testimony to audio only and cut short respondent's attempts at cross examination. Petitioner provided little testimony beyond stating that respondent sexually assaulted her "a few times," about 10 years earlier, when she was approximately seven years old. When asked about specifics, petitioner stated that she did not "really want to talk about that right now." Beyond stating that she did not want respondent to contact her during the police investigation, petitioner also did not explain what put her in reasonable apprehension of sexual assault. See MCL 600.2950a(2)(b). When respondent's counsel attempted to cross examine petitioner, the circuit court cut counsel off.

Petitioner provided some detail of the alleged assaults in her petition, but the procedure employed at the hearing did not permit the circuit court to consider the evidence properly, nor did the circuit court require petitioner to establish that she had been sexually assaulted or was in reasonable apprehension of sexual assault. Instead, after respondent was denied the ability to cross-examine petitioner and elicit information on the allegations against him, the circuit court asked respondent for evidence and then denied respondent's motion.

In sum, the circuit court abused its discretion by prohibiting respondent's counsel from fully cross examining petitioner. The circuit court also abused its discretion by (1) permitting petitioner to testify off-camera and (2) shifting the burden of proof from petitioner to respondent, and these errors were plain. The errors affected respondent's substantial rights, specifically his liberty interests. These errors were "inconsistent with substantial justice," MCR 2.613(A), and "seriously affected the fairness, integrity, [and] public reputation" of these PPO proceedings, *Carines*, 460 Mich at 763-764. Accordingly, we must vacate the circuit court's denial of respondent's motion to terminate the PPO.

A final note with respect to the PPO: Respondent briefly challenges on appeal the issuance of the ex parte PPO in the first instance. Respondent did not, however, squarely challenge this in his motion to terminate or during the hearing below. Because the circuit court proceedings prevented that court from making adequate findings, we will not address whether petitioner met her burden for an ex parte PPO under MCL 600.2950a. If respondent wishes to challenge the issuance of the ex parte PPO, then he may do so on remand.

## D. REMAND TO A DIFFERENT JUDGE

Finally, respondent argues that, on remand, this case should be assigned to a different judge because the circuit court judge misunderstood the burden of proof and exhibited bias in favor of petitioner. This Court may remand for proceedings before a different judge when "the original judge would have difficulty in putting aside previously expressed views or findings, if reassignment is advisable to preserve the appearance of justice, and if reassignment will no entail excessive waste or duplication." *Bayati v Bayati*, 264 Mich App 595, 602-603; 691 NW2d 812 (2004). "The mere fact that a judge ruled against a litigant, even if the rulings are later determined

to be erroneous, is not sufficient to require disqualification or reassignment." *In re Contempt of Henry*, 282 Mich App 656, 680; 765 NW2d 44 (2009).

Although the circuit court erred as explained here, there is no basis in the record to find that the circuit court judge would have difficulty setting aside her previous findings or that the appearance of justice requires that another judge preside over the matter. See *Bayati*, 264 Mich App at 603.

## III. CONCLUSION

We vacate the circuit court's order denying respondent's motion to terminate the PPO and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Thomas C. Cameron
/s/ Kathleen Jansen