*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* S. SHUKAIT-PIERCE, Minor.

UNPUBLISHED
December 09, 2025
2:55 PM

No. 369666
Livingston Circuit Court
Family Division
LC No. 2020-016098-NA

Before: YATES, P.J., and BOONSTRA and YOUNG, JJ.

PER CURIAM.

Respondent-mother[1] appeals by right the trial court's order terminating her parental rights to her minor child, SSP. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In 2020, petitioner, the Department of Health and Human Services (DHHS), filed a petition seeking the removal of SSP from respondent-mother's home, alleging that respondent-mother had overdosed in her car and fallen unconscious while SSP, who was then seven months old, was in the back seat. Respondent-mother entered a plea of admission to the allegations in the petition, admitting that she had overdosed on fentanyl with SSP in the car, that she had a criminal history that included controlled-substance charges and driving while intoxicated, that another child had previously been removed from her care because of her drug use and incarceration, and that she had been arrested in 2019 for outstanding warrants, forcing her to leave SSP with a friend. The trial court authorized the petition, and SSP was placed in nonrelative foster care; SSP was later placed with a paternal relative. Respondent-mother was ordered to follow a case service plan that included undergoing a substance abuse assessment and submitting to random drug screenings. The trial court referred her to mobile drug testing that would test her at her home. Respondent-mother initially missed several drug screens and tested positive for substances. Respondent-mother did well at most supervised parenting-time visits, and DHHS workers noted a bond between her and

---

[1] The child's father was also a respondent in the proceedings below, and his parental rights to SSP were terminated by the trial court; however, he is not a party to this appeal.

SSP. Unfortunately, over the next year, respondent-mother missed multiple scheduled appointments for a psychological evaluation, she was charged with carrying a concealed weapon and driving with a suspended license and without insurance, and drugs were found in her car. Over the course of the year following SSP's removal, respondent-mother remained appropriate during parenting times, but missed several of them and failed to participate in drug screens and services to which she was referred.

In January 2021, petitioner sought to change the goal from reunification to termination; however, the trial court chose to give respondent-mother more time to comply with and benefit from her service plan. The next month, respondent-mother was incarcerated following her arrest for failure to appear for a court hearing and felon in possession of a firearm. While incarcerated, respondent-mother demonstrated dramatic improvement, leading the foster care worker to opine that she was "really thriving since she's been incarcerated." Respondent-mother became consistent with her communications, finally completed her psychological evaluations, engaged in services, and sought further services. The psychological evaluator observed that respondent-mother had a history of inflating her self-portrayal, blaming others for her misfortunes, failing to accept responsibility, and an "endless merry-go-round between drug use cessation and relapses" in which she would repeatedly be able to maintain sobriety for only six months to a year after being released from treatment.

Following respondent-mother's release from incarceration in November 2021, she displayed significant improvement for several months, attending all parenting times and drug screens, complying with services, and reestablishing her bond with SSP. Because of her improvement, the trial court granted her unsupervised parenting time with SSP. However, in April 2022, respondent-mother began missing drug screens, her participation in therapy became inconsistent, and her parenting time had been suspended until she provided a negative drug screen. She remained appropriate at the parenting-time visits she attended, and there remained a close bond between respondent-mother and SSP; nonetheless, at a review hearing in May 2022, the trial court agreed that the goal should be changed to termination, noting that SSP had been removed from respondent's care for over two years.

In July 2022, respondent-mother's retained attorney moved to withdraw as her counsel, and the trial court appointed new counsel. In August 2022, petitioner filed a supplemental petition seeking termination of respondent-mother's rights to SSP. After petitioner filed its termination petition, the matter was adjourned twice; in the meantime, respondent-mother again began to make significant progress. She was once again maintaining sobriety, continuing with services, and was visibly healthier. In 2022, petitioner took the remarkable step of withdrawing its termination petition. The trial court expressed hope that respondent-mother would succeed, but it expressed concern that, with her history, she would need monitoring to determine whether she could ultimately maintain her sobriety.

In March 2023, respondent-mother again began missing drug screens. After SSP moved to Tennessee to be placed with a paternal relative, respondent-mother tested positive for methamphetamine. The trial court and the lawyer-guardian ad litem (LGAL) were sympathetic to respondent's distress at the child being moved out of state, but they observed that respondent-mother had already started missing drug screens before SSP was moved, and they were concerned that respondent-mother had responded to the stress of SSP's move by relapsing into drug use.

In April 2023, petitioner filed another supplemental petition seeking to terminate respondent-mother's parental rights. The trial court suspended respondent-mother's in-person parenting time out of concern that she might travel to Tennessee. Shortly thereafter, respondent-father brought SSP back to Michigan and, admittedly knowing that she was violating the court's order, respondent-mother went to respondent-father's apartment, broke into the home, and drove away with SSP. The police eventually recovered SSP, who was soaked in urine and traumatized. The LGAL and respondent-mother's caseworker believed that respondent-mother was under the influence of drugs at the time she took SSP, because she had tested positive for methamphetamine and benzodiazepines shortly after that incident. The trial court suspended respondent-mother's parenting time entirely. Respondent-mother entered a sober living house, but was ejected in June 2023 for violating rules about leaving the house.

Respondent-mother's termination hearing was held in July and September of 2023. The trial court found that respondent-mother had not improved in the years the case had been pending. She made excuses, blamed other people, demonstrated an inability to take responsibility or to benefit from services, and made only token gestures of admitting that she made poor decisions. Respondent-mother had "ample opportunity" to prove herself and reunify with SSP, but she instead chose to prioritize herself, abuse substances, and subject SSP to trauma in violation of court orders. The trial court recognized that there had been a bond between respondent-mother and SSP, but it found that the bond had been weakened by the trauma that respondent-mother had caused to SSP, and it noted that SSP did not ask about her while in foster care. The trial court found that respondent-mother's "testimony was filled with excuses and blame," showcasing her inability to do what was necessary for reunification despite being given additional chances. The trial court found that SSP was thriving in placement but needed stability that could not be achieved "while remaining on the rollercoaster of [respondent's] non-compliance and substance use, which has played out since the removal in early 2020." The trial court recognized that SSP was placed with a relative, but it found that respondent-mother posed "a real and substantial risk" to SSP's well-being, which, in combination with the questionable remaining bond and SSP's need for permanency, outweighed the factors that weighed against termination. Accordingly, the trial court found that statutory grounds for termination had been proven, and that termination of respondent-mother's parental rights was in SSP's best interests. The trial court entered an order terminating respondent-mother's rights as described. This appeal followed. After filing her claim of appeal with this Court, respondent-mother moved this Court to remand for an evidentiary hearing regarding her counsel's alleged ineffectiveness; this Court denied the motion without prejudice to a determination on plenary review that remand is warranted.[2]

## II. DISABILITY ACCOMMODATIONS

On appeal, respondent-mother does not directly challenge the trial court's findings that statutory grounds for termination were proven by clear and convincing evidence. Rather, she argues that the trial court and petitioner erred by failing to afford her a number of accommodations under the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*. She also argues that she

---

[2] See *In re S Shukait-Pierce*, unpublished order of the Court of Appeals, entered February 25, 2025 (Docket No. 369666).

received ineffective assistance of counsel, mostly because none of her attorneys expressly requested ADA accommodations. We disagree.

This issue is not preserved for appellate review, because respondent-mother did not address any alleged deficiencies in her case service plan in the proceedings below, *In re Atchley*, 341 Mich App 332, 336-338; 990 NW2d 685 (2022), and there is nothing in the record to suggest that she ever made an express request for accommodations, *In re Sanborn*, 337 Mich App 252, 263 n 3; 976 NW2d 44 (2021). Therefore, our review of this issue is limited to plain error affecting substantial rights. *In re Claudio-Perez*, 513 Mich 1126, 1126; 7 NW3d 55 (2024); *In re Sanborn*, 337 Mich App at 263. Additionally, respondent-mother relies heavily on materials that she submits on appeal but that were not provided below. Expansion of the record on appeal is generally prohibited. See *People v Serges*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 355554); slip op at 18. However, this Court may consider those materials for the limited purpose of evaluating whether remand for an evidentiary hearing regarding her ineffective-assistance claim is warranted. See *People v Moore*, 493 Mich 933, 933; 82 NW2d 580 (2013).

Respondent-mother asserts that she informed DHHS that she suffered from a disability in May 2023, more than three years after the initial petition was filed. Nothing in the record, however, supports that contention. In support of her motion to remand filed in this Court, respondent-mother provides this Court with an unnotarized "declaration" that purports to summarize her efforts to seek accommodation from DHHS and the trial court. This document is not part of the lower court record, is not notarized, and need not be considered by this Court as record evidence or an offer of proof. *Sherry v East Suburban Football League*, 292 Mich App 23, 31; 807 NW2d 859 (2011). Further, even considering that declaration, respondent-mother does not inform this Court what her supposed disability actually is, or indicate that DHHS was so informed. DHHS is not required to accommodate a disability of which it is not aware. *In re Hicks/Brown*, 500 Mich 79, 85-87; 893 NW2d 637 (2017). Appended to respondent-mother's declaration is an e-mail from an "ADA advocate" stating that the advocate had requested ADA accommodations at a May 2023 family team meeting, but that e-mail does not specify respondent-mother's disability or the specific accommodations requested, and it in fact primarily discusses disability accommodations for SSP in her foster-care placement.

Respondent-mother also provides this Court with a request-for-accommodations form that she purportedly filed with the trial court in June 2023; it states that respondent-mother suffers from a "[c]ommunication disability that substantially limits communication, interaction with others, and speaking, [sic] when coercive, intimidating, or threatening language or actions are in play." The accommodations form also provides that respondent-mother has "other disabilities," and requests several "accommodations" which are, to say the least, vague or ambiguous, such as a request that respondent-mother "be given equal access without coercion, intimidation, threats, or interference with her ADA rights," that does not specify to what respondent-mother seeks access. The form also requests that respondent-mother "be given privacy and independence," again without providing context or specific actions to be taken. The only request for specific actions by the trial court are that respondent-mother be allowed to have her ADA advocate present, be allowed to attend "any and all proceedings" via videoconferencing software, and "be allowed to take breaks for disability mitigation."

The record before this Court does not indicate that the trial court or DHHS was made aware of respondent-mother's alleged disability or the need for accommodation. *Hicks/Brown*, 500 Mich

at 85-87. In any event, even if this Court considers the materials provided by respondent-mother that are outside the record, and assumes that respondent-mother has demonstrated that she requested certain accommodations from the trial court and petitioner, she has not demonstrated that the trial court and petitioner failed to reasonably accommodate her. Although not every hearing was conducted via teleconferencing software, the record shows that respondent-mother was able to attend several hearings remotely. Further, the record reflects that an "ADA advocate" and an unspecified support person attended some hearings, indicating that the trial court never prohibited respondent-mother from bringing a support person to hearings. Nor was respondent-mother ever prohibited from taking breaks during proceedings—in fact, the trial court explicitly told her that she could take a break to confer with her attorney during her testimony at the termination hearing.

Regarding respondent-mother's argument that she was denied a reasonable accommodation by being asked to attend certain hearings in person rather than via teleconferencing software, the record does not show that respondent-mother framed her requests to attend remotely as a necessary accommodation for a disability. The trial court noted at one point that it wanted testimony to be in person because it was otherwise "difficult for the Court to observe testimony, things like credibility and even just technology issues." Testimony through videoconferencing instead of in person alters and undermines any possible credibility assessments that can be made by a viewer. *HMM by CM v JS*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367586); slip op at 6; *People v Heller*, 316 Mich App 314, 320; 891 NW2d 541 (2016). The trial court had a good reason for wanting testimony to be in person, and we find no plain error requiring reversal in the trial court's requirement that respondent-mother attend some hearings in person. See *Hicks/Brown*, 500 Mich at 85-87 (noting that DHHS is not required to provide an accommodation that "would fundamentally alter the service provided"); *Claudio-Perez*, 513 Mich at 1126.

The larger issue with respondent-mother's entire accommodations argument is that respondent-mother never identifies any reasonable accommodations that DHHS or the trial court failed to make that would have enabled to her to comply with her case service plan and benefit from the services provided to her. Whether or not respondent-mother was denied reasonable accommodation regarding remote attendance at hearings or the availability of breaks would not appear to have impacted respondent-mother's ability to refrain from using illegal drugs, which the record shows was the primary condition that led to adjudication and, overwhelmingly, the condition that led to termination. See MCL 712A.19b(3)(c)(i). The reasonableness of the services offered to a respondent-parent may relate to the sufficiency of the evidence in support of termination. *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005). The nature of the trial court's statutory-grounds findings may also be relevant to the reasonableness of the efforts at reunification. *In re Rippy*, 330 Mich App 350, 355-358; 948 NW2d 131 (2019). Respondent-mother has not demonstrated that any failure on the part of DHHS or the trial court to provide the accommodations she requested (assuming for the sake of argument that they were clearly and timely requested) had any impact on her ability to access and benefit from services aimed at helping her attain and maintain sobriety. We find no plain error requiring reversal on this issue. *Claudio-Perez*, 513 Mich at 1126.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent-mother also argues that she received the ineffective assistance of counsel. We disagree.

> A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo. To preserve the issue of whether counsel rendered ineffective assistance, the defendant must move for a new trial or evidentiary hearing in the trial court or move for remand on appeal. Where a defendant fails to preserve a claim of ineffective assistance of counsel by failing to seek a *Ginthe*r[3] hearing in the trial court, this Court's review is limited to mistakes apparent on the record. [*In re LT*, 342 Mich App 126, 133; 992 NW2d 903 (2022)(quotation marks, citations, and footnote omitted).]

In this case, respondent-mother did not file a motion for an evidentiary hearing or new trial in the trial court, and, as stated, this Court denied her motion for remand. Accordingly, our review is limited to mistakes apparent on the record. *Id.*

To establish ineffective assistance of counsel, a defendant must show that "(1) his trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Id.* at 134. In this case, respondent-mother argues that she received the ineffective assistance of counsel because one of her attorneys was later disbarred, another of her attorneys showed up late for some hearings, and none of her attorneys advanced a request for accommodations to the trial court.

Respondent-mother's argument regarding her attorneys' alleged ineffectiveness ignores several facts apparent from the record: (1) her attorney who was disbarred was not disciplined for any matters concerning this case, (2) the trial court waited for the tardy attorney to arrive before addressing respondent's case, and (3) respondent-mother does not state that she ever *asked* any of her attorneys to request accommodations on her behalf. Further, because respondent-mother never identified her disability, any effort to request accommodations by her attorneys would likely have been meritless, and attorneys are not required to advance meritless positions. *Serges*, ___ Mich App at ___; slip op at 14. Similarly, although petitioner is required to make reasonable modifications to its services to accommodate disabilities, it is not obligated to make modifications that "would fundamentally alter the service provided" or to "accommodate a disability of which it is unaware." *Hicks/Brown*, 500 Mich at 85-87. Respondent-mother has not demonstrated a reasonable probability that any of her attorneys' alleged errors in her case affected the outcome of the proceedings against her.

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

## IV. BEST-INTEREST DETERMINATION

Respondent-mother argues that the trial court erred by finding termination to be in SSP's best interests. We disagree. We review a trial court's best-interest determination for clear error. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012).

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *Olive/Metts*, 297 Mich App at 40. The facts supporting a trial court's best-interest determination must be proven by a preponderance of the evidence. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014).

Respondent-mother argues that the trial court should not have found that termination was in SSP's best interests, because SSP was placed with a relative, there was a bond between respondent-mother and SSP, and the trial court had options other than termination. We disagree. It is true that, for much of the case, there was a bond between SSP and respondent-mother, and she was generally good at parenting times when she was sober. But the record reflects that she was unable to maintain that sobriety, and she made dangerous and unsafe decisions when she was using illegal drugs, which included attempting to kidnap SSP in knowing violation of a court order even after several years of services. Moreover, she overdosed in the car with SSP in the back seat, was charged with crimes related to her drug use, and missed parenting times due to that use, leaving SSP to wonder where she was. Those choices either harmed SSP or exposed her to possible harm. The trial court was permitted to weigh the existence of a bond against other factors, such as SSP's need for safety, permanency, and stability. See *White*, 303 Mich App at 711-712.

Respondent-mother also argues that the trial court inadequately considered SSP's placement with a relative. We disagree. The trial court discussed the fact that the child was placed with a paternal relative, and noted that it weighed against termination, but it found that fact outweighed by respondent-mother's demonstrated inability to maintain sobriety for more than brief periods, the fact that she knowingly chose drugs over SSP, her violation of court orders, her own conduct that weakened her bond with SSP, and SSP's need for stability. See *White*, 303 Mich App at 711-712. The trial court did not clearly err by finding that respondent-mother's instability, criminality, destructive choices, and drug use showed that termination of her parental rights was in the child's best interests. *Olive/Metts*, 297 Mich App at 40.

Affirmed.

/s/ Christopher P. Yates
/s/ Mark T. Boonstra
/s/ Adrienne N. Young